No. 876

First Circuit

UNION INDEMNITY CO. v. BLAISE
DOWNTOWN STORAGE, INC.

(December 8, 1931. Opinion and Decree.)

Chas. A. Holcombe, of Baton Rouge, attorney for plaintiff, appellee.

Breazeale & Sachse, of Baton Rouge, attorneys for defendant, appellant.

LeBLANC, J. On September 29, 1930, the plaintiff insured a Packard automobile belonging to Clay W. Becker, Inc., of New Orleans, La., against loss by reason of damage caused by accident. On November 10, 1930, during the life of the policy, Ginder Abbott, manager of the wholesale department of Clay W. Becker, Inc., acting within the scope of his duties as such, drove the insured automobile to Baton Rouge and stored it for the night with the defendant, who operated an automobile storage garage at No. 218 Convention street in that city. On the following morning, Abbott paid the storage charges due and went to obtain delivery of the car. While it was being removed from the floor of the elevator in the garage, it was damaged in an accident, which it is claimed was due to the defective mechanical condition of the elevator. Plaintiff paid the damages under the policy which amounted to the

sum of $340.40 and had itself subrogated to the right of action of Clay W. Becker, Inc., against the defendant, under which this suit is prosecuted.

The defense is that Abbott himself is to blame for the accident, as he took entire control of the automobile in driving it from off the floor of the elevator after having ordered the negro employee of the garage, who was competent to handle it, out of the driver's seat. It is denied that the elevator was defective in any way, and specifically averred that, had Abbott permitted the negro attendant to drive the car out, as the latter was able to do, it would have been taken off in safety and without any damage. It is further urged that Abbott, in taking charge of his automobile and relieving defendant from delivering it to him, by having ordered the negro boy engaged for that purpose out of it, assumed all responsibility for damages, and therefore it is not liable.

From a judgment in favor of the plaintiff for the amount of the claim, defendant appealed.

The evidence shows that Abbott had driven from Lake Charles late that evening to Baton Rouge. It had been raining all afternoon, and he says that the floors in the garage were wet; this no doubt being caused by the cars driving in from the rain. It was rather cold also, and this made it a bit more difficult to start off the motor early the next morning when he went to get his car. He says that he gave instructions to store his car where it would be possible to get it out quickly as he wanted to leave early the following morning. He was at the garage between 6 and 6:30, paid the storage charges, and went for his car, which he found on the floor of the elevator in the rear end of the garage.

It is shown that, when the elevator was all the way down, its floor sank some three or four inches below the level of the main floor of the building, and, in driving an automobile from off of it, it was necessary to use a good bit more power than ordinarily to get the wheels over the rise between the two floors. Especially was it so in this case as the car had to be backed off instead of driven forward. The negro employee, Robert Hayes, seemed to be having some difficulty in starting the motor. Abbott, apprehensive that he might damage the storage battery by the grinding of the motor, told him to get out and that he would start it off himself. He did get into the driver's seat and started the motor, and by this action defendant contends that he assumed full control over his car and relieved its employee from responsibility. Abbott testifies however, that the negro employee stood by directing him how to back off on account of the difference in elevation between the two floors, at which moment, the accident happened. This the negro admits. It cannot be said, therefore, that Abbott was in entire and absolute control of the situation in such manner as to have relieved defendant's employee of all responsibility.

Conceding that he had, however, we do not think that this is the vital issue in the case as it appears to us that the proximate cause of the accident was the defective mechanical condition of defendant's elevator, on which their employee had driven the automobile.

Abbott's statement as to how the accident occurred is not disputed. He says that as the back wheels of the car left

the elevator, the weight was all to one side. This caused the starter of the elevator to trip, and it began to rise. On account of the slippery floor, the back wheels would not grip and the car would not move. The elevator carried it upwards with it until it reached the second floor of the building, when it stopped. The front end of the car was then jammed between the elevator floor and the second floor of the building, the rear end remaining suspended in the air as it were. The damages to the front end of the car which resulted can readily be imagined.

We do not find any merit in counsel's contention that, had Mr. Abbott permitted the negro employee to back the car off the elevator, he would have done so without any trouble, as under our appreciation of the circumstances under which it happened the accident could just as well have occurred with any driver at the wheel. What really caused it was not the way in which the car was handled, but the fact that the elevator was not in good mechanical condition. Clyde Strait, building superintendent for the Louisiana National Bank in Baton Rouge, who was qualified on the witness stand as a competent elevator mechanic, expressed the opinion that an elevator that would start off as this one did was in bad mechanical shape. When asked to explain what probably happened to make it go up automatically under the conditions testified to, he states that the operating cable was in the wrong position. The fact that the elevator sank below the level of the floor of the building, he holds, would of itself indicate that it was not properly adjusted and would have a tendency to rock, thus causing it to start and stop at an unusual place. There is no contradiction of Strait's testimony, and it is to a large extent corroborated by that of Abbott, who also testified as having had quite a bit of experience with elevators of this kind.

Counsel for defendant urges upon the court the well-known doctrine that a bailee is not an insurer of the goods that are stored with him and he is answerable only for those damages resulting from his negligence. They contend that there is nothing in the record to show that the defendant bailee in this case had knowledge of the faulty mechanical condition of the elevator, and without such knowledge there was no negligence. We readily accept the first proposition advanced by counsel, but do not agree with them in their second contention. Clearly, it is the garage owner's duty to equip himself with safe mechanical appliances used in operating his business of storing and delivering automobiles, and further to maintain them in that condition. The elevator used by this defendant was such an appliance. It was not in a safe mechanical condition on the morning it was being used to deliver the car that was damaged in this case. It appears to us, that the difference in the level between the floor of the building and that of the elevator, when lowered, was of itself sufficient to suggest to the defendant, that the elevator was not properly adjusted. No attempt even was made to show that ordinary care or precaution was taken to see that the elevator was in good mechanical condition. In the absence of such showing, defendant's negligence seems clear to us, and we are bound to hold it liable for the damage occasioned thereby.

The judgment of the lower court correctly decreed it to be so for the full amount of the claim, and it is therefore affirmed.