## GULF INS. CO. v. TEMPLE.

### No. 5831.

Court of Appeal of Louisiana.
Second Circuit.

March 31, 1939.

Coleman & Morgan, of Shreveport, for appellant.

Irion & Switzer and Henry F. Turner, all of Shreveport, for appellee.

DREW, Judge.

Plaintiff, an insurance company of Dallas, Texas, paid to T. E. Collins $107.90, being the amount due under a fire insurance policy for loss sustained by Collins when a truck owned by him caught fire while being repaired. Plaintiff alleged

that the fire started while defendant, A. H. Temple, under contract with Collins, through one of his employees, was repairing the truck by the use of a blowtorch, and that the fire resulted from the negligence of Temple's employee. Plaintiff obtained from Collins a subrogation of his rights and actions against Temple.

Defendant denied each and every allegation of plaintiff's petition and, further answering, alleged that he at no time had a contract with T. E. Collins to repair any truck belonging to him and, upon information and belief, alleged that T. E. Collins contracted with one of defendant's former employees for the repair of the truck and that this former employee is responsible to Collins, if anyone is; and further alleged that he had nothing whatsoever to do with the truck or the repairs thereto.

On these issues the case was tried below, resulting in judgment for plaintiff as prayed for. Defendant has perfected an appeal to this court.

Mr. Collins, who operated a fleet of trucks, and Mr. Temple, who operated a repair department, occupied the same lot near Rodessa, Louisiana. Their offices were adjacent to one another, and there were some small buildings located on the lot, one of which was used by Temple as a shop. Whenever it became necessary to have any welding done in repairing the trucks, Mr. Temple, his brother or any of his employees who were idle at the time, were called upon by Collins or his employees to perform the work. This was the custom which had prevailed for some time. After the work was completed, a ticket showing what repairs had been made and number of hours required for the job, was presented to the one who had ordered the work done, and he would sign the ticket. On the day of the fire which caused this suit, one of Collins' employees ordered a man, whose name is not known, to do some welding on one of the trucks owned by Collins. In performing the work, it was necessary to use the blowtorch just behind the cab. He was welding the "headache" rack right up behind the cab. The back window of the cab had been taken out and the flames from the blowtorch must have gone inside and set it afire. There is no positive proof as to how it caught.

There is testimony that the welder had been in Temple's employ and, at the time he was instructed by Collins' employee to repair the truck, he was standing in the door of the shop operated by Temple. It is admitted that he was employed by and working for Temple on the morning of the day of the fire in the afternoon. Collins' employee was of the opinion that the welder was in Temple's employ at the time he gave the instructions for the repairs to be made. It is evident that Collins' employee was following a custom recognized by both Collins and Temple for some time and, if the welder was not in Temple's employ at the time, it was not known to Collins' employee who was given no such information by the welder and, when he was instructed to do the welding as an employee of Temple, he proceeded to do the job.

The evidence is conflicting as to whether Temple collected from Collins for the job or not. It was completed after the fire was extinguished. Temple swears he did not and the bookkeeper for Collins and the employee who ordered the work done, swear he did. Neither Temple nor Collins could have any interest in the case for the reason their employer had been fully paid for his loss by the insurer, plaintiff herein; and, regardless of the outcome of this suit, he stands to lose nothing.

The defense on the facts is that the welder was not in his employ at the time he performed the work on the truck. He swears that he only employed the welder that morning to perform a special job of work; that he, defendant, left his place of business about ten-thirty A. M., at which time he told the welder that he was fired at eleven o'clock A. M., and paid him up until that time. He does not go into detail as to the amount he paid him. The welder was not present at the trial of this case and therefore did not testify. Defendant does not contend that the welder had completed the job he was employed to perform at ten-thirty. The inference to be drawn from defendant's testimony is that he thought the welder would be through by eleven; therefore, he paid him before he had finished the job and he, the defendant, left the place of business and did not return until after the fire. He contends the welder was a stranger to him and that he does not know his name.

If defendant acted as he testified he did, it was rather unusual; in fact, most unusual for him to pay a transient welder for a job of work before it was completed

and leave him with no one to supervise or see that he completed the job properly. Defendant contends that the welder was only employed that morning. There is testimony that he had been employed previously by defendant and had been seen driving defendant's truck at the request of defendant.

The lower court must have determined this controversial fact adversely to defendant's contention, and we cannot say there is any manifest error in its so doing.

Defendant insists here that plaintiff has failed to show the fire was caused by the negligence of the welder and contends that the rule of law applicable is,—"To avoid liability for loss of articles in bailee's possession by fire, bailee usually need only to point to the fire itself; whereupon burden shifts to bailor to show that bailee was not without fault in connection with the origin of the fire or in failing to take proper steps to extinguish it;" and cites in support of this rule the following cases: Union Indemnity Company v. Blaise Downtown Storage Company, 18 La.App. 295, 138 So. 226; New Orleans Soda Water Company v. Leonard, 9 Orleans App. 220; Maine v. Mossler Auto Exchange, 10 La.App. 382, 120 So. 533; Royal Insurance Company v. Collard Motors, La. App., 179 So. 108, 110.

We are of the opinion the rule applicable in this case is that laid down in Royal Insurance Company v. Collard Motors, supra, wherein the court said:

"It would indeed do violence to the reasons on which is established the general rule contended for by defendant to extend that rule to such facts. To do so would give to any bailee an 'open sesame' whenever, through his carelessness, property intrusted to him might be burned. He could merely point to the fire, say, 'I know nothing about it,' and rest secure, requiring the bailor, with the hardihood to persist in his claim, to prove that there had been negligence on the part of the bailee, which, having no knowledge whatever of the real facts, of course he could not do. We think it is a fairer rule, where such a limited fire occurs, that the bailee should, as he must in all other cases, prove his own freedom from fault and should not be permitted to rest on the proof of the fire alone. Of course, in doing so he need not ordinarily go so far as to show the actual cause. This is not required even of a

carrier of passengers. Cusimano v. New Orleans Public Service, Inc., 170 La. 95, 127 So. 376. But, where the facts are so exclusively within his knowledge, he must show all facts of which he has knowledge and these facts must not involve negligence on his part.

"The implements which the bailee used in this case—the gasoline which, as we shall later show, was spilled on the floor, and the tools which were applied to the car—were so exclusively within the control of the bailee as to place upon it the burden of absolving itself from negligence.

"In Jones v. Shell Petroleum Corporation, 185 La. 1067, 171 So. 447, 449, the Supreme Court, citing 45 C.J. § 768, p. 1193, said:

" 'Where the thing which caused the injury complained of is shown to be under the management of defendant or his servants and the accident is such as in the ordinary course of things does not happen if those who have its management or control use proper care, it affords reasonable evidence, in absence of explanation by defendant, that the accident arose from want of care. 45 C.J., § 768, p. 1193.'

"Later in the opinion appears the following:

" 'Thus, when the thing which produced the injury is under the control of the defendant or his servants and the injury would not have occurred unless negligence had been present in some form, and the facts causing the injury are peculiarly within the knowledge of defendant and not equally accessible to plaintiff, the burden is on defendant to explain the cause of the accident, if he desires to escape from the inference of negligence.'

\*　　\*　　\*　　\*　　\*　　\*

"Those reasons exist here, and we conclude that, because of the circumstances surrounding the burning of the automobile, defendant was under the necessity of absolving itself from fault, and that a mere reference to the fire, without showing, in addition, the absence of causal connection between the negligence of itself or of its employee and the fire, is not sufficient to free it from liability."

Defendant contends the above quoted rule from the Collard case should not apply here because the truck was not in the possession or control of the defendant. The record discloses that the lot on which the truck was located was

used by both Temple and Collins and there was no separate part set aside for each of them. Whenever Temple worked on Collins' trucks, if convenient, the work was performed wherever the truck was located on the lot. No one was around the truck when the fire started, except defendant's employees. It was as much in the possession and control of defendant's employees as if it had been in his shop located elsewhere.

Defendant has not absolved himself from fault in the burning of the truck and, under the circumstances of this case, the law required that he do so.

The judgment of the lower court is therefore affirmed, with costs.