MARINE & MOTOR INS. CO v. CATHEY

____

(October 17, 1927. Opinion and Decree.)
(November 14, 1927. Rehearing Refused.)
(January 20, 1928. Writ of Certiorari and
Review denied by Supreme Court.)

____

(*Syllabus by the Court*)

1. **Louisiana Digest—Automobiles—Par. 9 —Warehousemen and Warehouse Receipts—Par. 6.**
One who has received an automobile for the purpose of repairing the same is liable to the owner for any damage caused by his negligence.

Appeal from the Civil District Court. Hon. Porter Parker, Judge.

Action by Marine and Motor Ins. Co. against J. D. Cathey.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

A. A. Moreno, of New Orleans, attorney for plaintiff, appellee.

John R. Perez, of New Orleans, attorney for defendant, appellant.

CLAIBORNE, J. This is a suit for damages to an automobile while in the possession of defendant for repairs.

The plaintiff alleged that the defendant is engaged in the business of repairing automobiles; that on April 12, 1920, William K. Seago brought his auto to defend-

ant's garage for having repairs made to it; that while in the possession of defendant said auto was partially burned through the negligence of defendant's agents; that plaintiff had issued to said Seago a policy of insurance against fire by which it had agreed to pay the assured the damage to said auto by fire; that as a result of the ·damage to said auto the plaintiff was compelled to pay $350 for painting the auto, and one hundred two and 55-100 dollars for repairs to the engine; that plaintiff has been subrogated to the rights of Seago against the defendant; and it prays for judgment against it for $452.55.

The defendant admitted that plaintiff's auto was damaged by a fire caused by internal combustion within the automobile itself while the same was in defendant's floor; but defendant denied every other allegation in plaintiff's petition contained.

There was judgment for plaintiff as prayed for and defendant has appealed.

William K. Seago testified that he bought the car from defendant; there was a tacit agreement that the car should be kept in repair for sonie time and whenever any little trouble happened to the car he took it to the defendants for repairs; he took it to them the last time for some minor trouble, and when he went for the car he found it pretty badly damaged by fire.

It was admitted that Seago had a fire policy in the defendant company, and that it caused to be made the repairs caused by the fire, and that Seago subrogated it to his rights against defendants; when he brought his car to the defendants' garage he merely delivered it to some one in charge and told him what the trouble was with the idea of having the repairs made.

It was admitted that William M. Jurgens paid $102.55 for repairs to the auto which were necessitated by the fire.

C. A. Miessner testified that he does automobile painting and trimming; that when the car was brought to his place of business the inside upholstering was burned and the cowl all burnt up; that he was paid $350 for the repairs.

"Q. Mr. Meisner, what was the cause of the fire damage to the car? Was it apparent that the fire damage had been caused by a fire within or without the car?
"A. That I could not answer; I don't know.
"Q. Didn't you examine the car when you painted it?
"A. No, sir, I had no occasion to examine the car. My orders were to paint it and fix up the upholstering on the inside of the car that was burnt.
"Q. Didn't your examination, however superficial it might have been, evidence to you that fire was caused from within the car rather than from without?
"A. No, that I couldn't answer.
"Q. You couldn't answer that?
"A. No; I don't know."

J. D. Cathey, defendant, testified that his business is selling and repairing automobiles; he is president of the defendant company; he denied that he had a contract with the plaintiff for the repairs of his car because there was no special work nor specified sum; yet he admitted that it is customary for customers to bring cars into the repair shop without seeing him This part of the defense is not worthy of serious consideration. The only explanation he gives of the fire in the car is as follows:

"Well, I found the car burned on the inside caused by the vacuum tank which holds a certain amount of gasoline having caught fire through some cause on the inside of the car, and burned on the inside."

Philo Willey is a mechanic and was the

service manager for the defendant; he testified that Seago brought his automobile to the shop and talked to him, and gave him the nature of the repairs to the motor; he was in charge of the repair work of this car; the car was in the garage about 24 hours before the fire, he explains the fire as follows:

"I was standing near the center of my service department there, and all at once some one hollered 'Fire,' and I went back and the car was on fire standing near the wash-rack. How the fire started I don't know; there was. no one near it; there was no one working on the car at the time."

Work had been done on the car the day previous about 5 o'clock when they left off; and the fire was at half past one or two in the afternoon; as near he could figure, it was caused by a short circuit possibly in the wiring some place at some part of the ignition or lights; it is possible for that to happen at almost any time; it might have happened upon the street as well as in the garage; the work to be done on the car was to remove the motor and to do some work on the cylinders; he saw that was done; the electrical system of the car had been adjusted or removed and something done to it by the mechanics; it had to be done to take the motor out. On cross examination he admitted that he had signed a statement that 'a man named Seaman had been working on that car at the time of the fire and had left the car to go to a work bench."

H. L. Landry testified that he was in charge of the service department of defendant and an auto mechanic; he saw the fire and helped to put it out; he was 50 to 75 feet from the fire when it started; he does not know how the fire occurred; "it started of its own origin; that is the

fire just started by itself; the fire started inside of the car; there was no fire any where near; the fire was due to some short circuit in the car; the engine was taken out of the car; the wires had to be disconnected before the engine was taken out. The following questions were put to the witness:

"Q. Now, isn't it a fact that in order to set off any electricity being fed to any part of that car, that all you have to do is to unscrew the little screw on the top of the battery?
"A. Yes.
"Q. Isn't that right?
"A. Yes, sir.
"Q. Now, isn't it a fact, Mr. Landry, that if  man who worked on that car had simply unscrewed the little screw on the top of the battery, that there would have been no possible communication of electricity to any part of that car?
"A. I don't know; not after it is disconnected, no sir.
"Q. Well, then, you say that if the wire was disconnected, that that would have shut off the electricity entirely from any part of the car; is that right? Didn't you say that?
"A. Yes.
"Q. Now, generally, about how long does it take you to turn that screw on the top of the battery?
"A. Well, five or ten minutes, that is the maximum; sometimes you can unscrew it in half a minute.
"Q. So that, if the mechanic who went to work on that car had spent from half a minute to ten minutes in unscrewing the screw from the top of the battery, he would have completely disconnected the electricity; isn't that right?
"A. Yes.
"Q. And if he had done that; there could have been no possibility of a short circuit?
No answer.
"Q. Won't you answer that?
"A. Well, no, there would not."

The witness further stated that it was not customary for garages to disconnect the batteries.

Mr. Willey, recalled, stated that Mr. Seaman had worked on the car; he was discharged by the witness because he was a Bolshevist, witness made no attempt to procure him; witness is no longer connected with the defendant company.

The defendant was a depository for repairs. In that capacity he is liable if property in his possession suffers damage or loss through his fault or through his want of care.

C. C. 2937 (2908); James vs. Greenwood, 20 La. Ann. —; Levy vs. Pike Bro. & Co., 25 La. Ann. 630; Marks vs. N. O. Cold Storage Co., 107 La. 173; 31 So. 671, 137 U. S. 613; Levy vs. Kirwin, 6 La. App. 93; No. 10883, Orl. App.

Although it is possible for a fire to occur as a result of a short circuit at any time on the street as well as in the garage, we are of the opinion that the preponderance of possibilities in this case is that the short circuit was caused by the mechanics engaged in the work on the car and owing to the negligent manipulations of the mechanics after they had removed the motor and engine and disconnected the wires. But if we are wrong in that conclusion, we entertain no doubt that it was negligence on the part of the defendant not to have removed the screw on the top of the battery and in that simple way have removed all possibility of a short circuit.

That there was danger after the wires were disconnected is proven by the fact that the defendant attempted to guard against it by taping the ends of the wires; it is evident that they did not succeed.