On March 25, 1948, an employee of plaintiff, Superior Iron Works Supply Company, Inc., delivered a Dodge two-ton truck to defendant's garage on Franklin Street in Shreveport, Louisiana, for the purpose of having the truck repaired. Defendant's employee took possession of the truck and drove same out of the garage for the purpose of determining the truck's condition and the repairs needed. While defendant's employee was driving the truck on the right side of the Market Street viaduct in the City of Shreveport, the vehicle went completely out of control; traveled across the wide four-lane viaduct; crashed through the heavy concrete guardrail and finally stopped with the cab portion even with the edge of the high bridge; its front end and the front portion, as far back as the steering wheel, suspended over air space with the truck almost in balance between remaining on the viaduct level or falling below to what appeared to be sure death for the driver and further destruction of the vehicle.
Fortunately the driver was unhurt and with the assistance of two wreckers, the truck was returned to defendant's garage where repairs totaling approximately $800.00 put the truck in condition to be delivered back to the Superior Iron Works for further use. Superior Iron Works paid defendant's repair bill of $809.93. The Louisiana Fire Insurance Company, Inc., the principal plaintiff herein, carried collision insurance on this truck and after paying its insured $759.93 (the repair bill less the $50.00 deductible under the policy), filed suit against the defendant garage to recover the amount so paid. The Superior Iron Works joined as party plaintiff, seeking the return of the $50.00 deducted by its insurer.
The District Court gave judgment in favor of the Louisiana Fire Insurance Company, Inc. as prayed for, but rejected the claim of the Superior company. Defendant appealed from the judgment and plaintiff, Superior Iron Works Supply Company, Inc., answered the appeal asking this Court to render judgment in its favor for $50.00 as prayed for.
The facts of the case are plainly indicated by the record and are not in dispute on many points. Employees of the Superior company had been experiencing trouble with the steering apparatus and on March 25, 1948, brought the truck to the Hodge garage for necessary repairs. Counsel for plaintiffs and defendant are in disagreement as to what transpired, at the time of the delivery of the truck, between Ralph Wynn, agent of the Superior company, and J. N. Hodge, employee of the Hodge garage, particularly with reference to whether Wynn *Page 562 
authorized J. N. Hodge to drive the truck for the purpose of determining more accurately its trouble and as to the extent of information given by Wynn to Hodge relative to the defective condition of the truck's steering gear. There appears in the record a typewritten statement signed by Ralph Wynn dated May 14, 1948, and reading as follows:
"This is to certify that I, the undersigned, authorized J. N. Hodge of R. W. Hodge and Sons Garage to drive a 1947 Dodge truck on March 24, 1948 belonging to Superior Iron Works to diagnose steering trouble for purpose of repairing the same."
Before signing the above statement, which is on the letterhead of the defendant company, Ralph Wynn evidently required that something be put down about his report to Hodge that he was having trouble with the steering apparatus. In evidence of this, there is a pencil memorandum written below Wynn's signature on the front of the same sheet, as follows:
"Mr. Ralph Win stated that truck was not steering right."
The misspelling of Wynn's surname confirms the impression that the pencil memorandum was written in by the agent of the Hodge garage.
Our conclusion is that the truck was delivered by Ralph Wynn, for the Superior company, to J. N. Hodge, for the Hodge garage, with an explanation that Wynn was having trouble driving the truck, and that he had experienced difficulty in avoiding colliding with parked cars while on his way from plaintiff's place of business to defendant's garage. We further conclude that Ralph Wynn knew that J. N. Hodge expected to test out the truck and determine the trouble by driving same on the streets of Shreveport and at the time of, or prior to the acquiescence, he told Hodge that the truck was not steering right, as indicated by the above statement.
We further find that the truck was being operated by J. N. Hodge at a reasonable rate of speed over the Market Street viaduct and after safely negotiating the upgrade and a portion of the downgrade, Hodge began braking action on the truck. Whereupon, the steering gear locked, the truck went completely out of control, crossed the viaduct, went over the sidewalk and crashed through the concrete balustrade and stopped with the front wheels and engine section suspended in mid-air. Hodge was not injured but doubtless would have been seriously hurt if not killed had the truck continued forward a few more inches and dropped to the distant ground underneath the viaduct.
At the time of the runaway crash, the truck had been turned over to the defendant garage in order that necessary repairs might be performed. The Courts of Louisiana have considered the garageman's liability under these circumstances to be that of a depositary. Marine Motor Insurance Co. v. Cathey, 8 La. App. 240. Article 2937 of the Revised Civil Code provides:
"The depositary is bound to use the same diligence in preserving the deposit that he uses in preserving his own property."
We next consider whether J. N. Hodge, in making the test drive, was using the same diligence in preserving the deposit that he used in preserving his own property. It is not unusual when an automobile, in need of repairs, is delivered to a garage, for the mechanic or shop foreman to make a test drive in order to determine the trouble. Had there been no accident, the result of the test drive was calculated to be of benefit both to the owner of the truck and the owner of the garage in that Hodge would have more definitely located the trouble and have been better able to effect proper repairs. If someone had read Article 2937 of the Revised Civil Code to J. N. Hodge and asked him the question whether in driving the truck he had followed the codal obligation "to use the same diligence in preserving the deposit that he uses in preserving his own property", he might well have answered that he certainly valued his own life and limb as much as he would value a truck had he owned one, and the fact that he thought the truck safe enough to risk the danger of death or injury to himself was evidence enough that he would have expected a mechanic to have *Page 563 
made a test drive of a truck of his were the circumstances reversed.
As a further indication that defendant's employee Hodge was taking no more chances than are usually risked, it can be noted that his driving of the truck over the streets for testing purposes created no more danger of damage to the truck than the just completed action of the Superior company's employee Wynn in driving the truck from the owner's place of business to defendant's garage. This is particularly true as the record shows that the description of the truck's trouble was such as to indicate that the condition was of long duration and chronic in character and there is nothing in the evidence to put Hodge on notice that the truck would become completely "runaway" on normal driving over the city streets. The fact that the Superior Iron Works Supply Company paid the defendant company the full amount of its bill for repairs, including the $50.00 for which the Superior company had no prospect of receiving reimbursement from its insurer, is a further indication (though of course not legally binding) that the officials of the Superior company did not consider Hodge negligent in making the test run which resulted in the collision.
Plaintiffs' counsel makes the contention that at the time of the accident, the defendant garage "had control of the vehicle involved and exclusive knowledge of the accident" and invoked the principle of law contained in the following quotation from the brief:
" 'Where the thing which caused the injury complained of is shown to be under the management of defendant or his servants and the accident is such as in the ordinary course of things does not happen if those who have its management or control use proper care, it affords reasonable inference in the absence of explanation by defendant that the accident arose from want of care.' "
"(45 C.J. Sec. 768, p. 1193, cited in Jones v. Shell Petroleum Corp., 185 La. 1067, 171 So. 447 and further cited in Gulf Ins. Co. v. Temple, [La. App.], 187 So. 814)."
It is doubtful that the above rule would be applicable to the present case for the reason that the defective condition of the truck, which resulted in the accident, was shown by the record to have been in existence at the time the truck was delivered to defendant, and for a considerable time prior thereto.
Since the defendant produced evidence as to the manner in which the accident happened, and the record shows that there existed no want of care on the part of defendant's employee who was driving the truck at the time of accident, it follows that defendant has discharged any burden which the law placed upon him to exonerate himself from the inference referred to in the above quotation.
Having found that the action of defendant's employee in beginning the test drive of the truck was not unusual or imprudent under the circumstances and that in doing so he was using no less diligence in preserving the deposit than he displayed in taking care of his own personal safety, and that the record establishes the cause of the accident, leaving no necessity for applying the rule as to burden of proof or inference of negligence, we conclude that plaintiffs' action is not well founded.
The judgment appealed from is set aside and judgment is now rendered in favor of defendant, rejecting the demands of plaintiffs, with costs.
TALIAFERRO, KENNON and HARDY, JJ., sitting. *Page 564