75 So.2d 710 (1954)
LEIGH
v.
JOHNSON-EVANS MOTORS, Inc.
No. 8178.
Court of Appeal of Louisiana, Second Circuit.
June 25, 1954.
On Rehearing October 29, 1954.
*711 Morgan, Baker & Skeels, Shreveport, for appellant.
Cecil C. Lowe, Minden, for appellee.
AYRES, Judge.
This is an action for damages for the destruction of plaintiff's automobile by fire in the garage of Johnson-Evans Motors, Inc., where it had been delivered for repairs, and for inconvenience and loss of the use of the automobile. The defendants are the motor company and its insurer.
The district court applied the doctrine of res ipsa loquitur to the facts of the case and held that the defendant motor company failed to establish its freedom from fault or negligence and rendered judgment in favor of the plaintiff against the defendants, in solido, for the sum of $600 as the value of plaintiff's automobile, but otherwise rejecting plaintiff's additional demands. From the judgment thus rendered, the defendants prosecute this appeal.
The evidence establishes these facts: That on the afternoon of March 21, 1953, plaintiff delivered to Johnson-Evans Motors, Inc., his 1947 4-door Super Deluxe Plymouth *712 Automobile for general repairs, such as over-hauling the motor, replacing seat covers, and doing a paint job; that defendant's garage was a semi-fireproof structure, with a concrete floor; that plaintiff's car was driven into the garage on the date of its delivery and placed in one of the repair stalls, where it remained until the following Monday morning, when the repairs were begun, with the removal of the motor.
There were several mechanics employed in the garage. At the close of the day on Monday afternoon, various other cars, including cars of the motor company, were driven in and stored in the garage. Other cars were located in the stalls for repairs and particularly in the stalls adjacent to that in which plaintiff's car was placed. The manager of the garage and motor company left the place of business at approximately 6:30 p. m. The shop foreman returned shortly thereafter and worked repairing an automobile in a stall next to plaintiff's car until about 10:00 p. m. During the course of a work day oil, gasoline and grease used in and about the garage were occasionally spilled on the floor, benches and equipment, such as is usually seen in most garages, requiring frequent sweeping and clean-ups. However, it appears these duties usually were postponed until the following morning.
The evidence further shows that all the mechanics, except possibly one, were frequent users of cigarettes while on duty and that it was customary for them to flip cigarette butts to the floor. The foreman on the night of March 23 continued his usual habit of smoking while on duty. At 3:19 a. m., March 24, 1953, the fire department was aroused by an alarm, notifying it of a fire in defendant's garage, whereupon the assistant fire chief arrived at the scene approximately two minutes later and found plaintiff's automobile on fire, and, in fact, for all intents and useful purposes, completely destroyed. The fire was centered on and limited to plaintiff's automobile but the cars alongside were scorched. Considerable smoke damage was done to the building itself.
Plaintiff alleged that his automobile was destroyed through the negligence of defendant's employees, and, from information and belief, that the fire was caused by the negligence of the employee, who, while working late at night, tossed a lighted cigarette upon the upholstery of his automobile; or, in the event the fire did not originate as aforesaid, then, in the alternative, that the fire was caused by the negligence of defendant's employees, the facts of which were peculiarly within the knowledge of the defendant.
Denying that the fire was occasioned by any negligence of its employees, defendant alleged that the fire was of unknown origin, occurring during the early morning hours after the motor had been removed and the battery detached and at a time when no one was in the garage or near the automobile. Neither the defendant nor any of its employees could account for or explain why or how the fire started. However, as a fact and as admitted by the motor company's manager, a fire is something that does not usually and ordinarily occur when due care and precaution have been exercised.
The evidence does not preclude or rule out the probability of a fire originating from the negligence of the shop foreman, while working late at night and smoking cigarettes, inadvertently tossing a lighted match or cigarette butt about the premises and perhaps upon the upholstery of plaintiff's automobile adjacent to the one upon which he was working. A workman who concentrates upon the task before him, one to be executed with precision, at times becomes oblivious to conditions about him and involuntarily will perform some act or acts pertaining to long-standing habit. This is but a consequence of long and continuous repetition. When the foreman quit work, it is certain there was no blaze in the automobile, otherwise, he would have observed it; but it is not at all certain that when he ceased work there was not the butt of a burning cigarette or a lighted match smoldering on the car's upholstery or some other substance on the oily and greasy floor, the fire from which in time *713 progressed to the point of generating noticeable smoke or blaze.
Defendant offered no evidence to rebut the strong circumstantial case made out by plaintiff and suggests no reason for the occurrence of the fire. To warrant judgment for plaintiff, it is only necessary to find that he has proven by a preponderance of evidence the truth of the essential allegations of his petition. In a case of this character, it is only necessary that the cause of the fire be proven by a preponderance of the evidence. When we take into consideration, weigh and give deserved credit to the undisputed facts of the case, the conclusion irresistably arises that the fire, for all legal intents and purposes, has been established to have been due to the fault and negligence of the defendant motor company's employees.
This case, therefore, presents for application the doctrine of res ipsa loquitur, which doctrine is this: When a thing which causes injury without fault of the injured person is shown to be under the exclusive control of the defendant and the injury or damage as such in the ordinary course of things does not occur if the one having such control uses proper care, then the injury or damage arose from the defendant's want of care.
As stated in the language of 65 C.J.S., Negligence, § 221(2), page 987:
"It is an established rule, known as the doctrine of res ipsa loquitur, that, where the thing which caused the injury complained of is shown to be under the management of defendant or his servants and the accident is such as in the ordinary course of things does not happen if those who have its management or control use proper care, it affords reasonable evidence, in the absence of explanation by defendant, that the accident arose from want of care."
"The term literally means `the thing speaks for itself;' it is a terse way of saying that the circumstances attendant on the accident to which it is applied are of themselves of such a character as to justify a jury in inferring negligence as the cause thereof."
In cases where the plaintiff cannot be expected to have any information as to the cause of the accident, and where the accident is of the kind which ordinarily does not occur when due care has been exercised, the rule of evidence is that the accident speaks for itself; that is, that a presumption of negligence arises from the fact of the accident.
In the case of Lykiardopoulo v. New Orleans & C. R., Light & Power Co., 127 La. 309, 53 So. 575, 576, the court said:
"In such cases, the plaintiff not only need not allege the particular acts of omission or commission from which the accident has resulted, but need not even prove them. The accident itself makes out a prima facie case, and the burden is on defendant to show absence of negligence. Res ipsa loquitur. That rule is of peculiar applicability in cases of boiler explosions. Thus, negligence may be inferred from the fact of the explosion of the boiler of the vessel, although the defendant is under no contract obligation to protect the plaintiff."
See also Gerald v. Standard Oil Co. of Louisiana, 204 La. 690, 16 So.2d 233.
Predicated on the facts and circumstances of this case, as hereinabove detailed, and upon the further circumstance of defendant's failure to explain the origin of the fire or to show his lack of knowledge of its cause, our opinion is that the doctrine of res ipsa loquitur is applicable. Appropriate here is the statement of the court in Jones v. Shell Petroleum Corporation, 185 La. 1067, 171 So. 447, 449:
"Where the thing which caused the injury complained of is shown to be under the management of defendant or his servants and the accident is such as in the ordinary course of things does not happen if those who have its *714 management or control use proper care, it affords reasonable evidence, in absence of explanation by defendant, that the accident arose from want of care. 45 C.J. § 768, p. 1193.
"This statement of the rule of res ipsa loquitur has been widely approved and adopted by the courts of last resort. Some of the cases in this jurisdiction in which the doctrine has been applied are the following, viz.: Maus v. Broderick, 51 La.Ann. 1153, 25 So. 977; Hebert v. Lake Charles Ice, etc., Co., 111 La. 522, 35 So. 731, 64 L.R.A. 101, 100 Am.St.Rep. 505; Willis v. Vicksburg, etc., R. Co., 115 La. 53, 38 So. 892; Bentz v. Page, 115 La. 560, 39 So. 599.
"While negligence is never presumed as a matter of law from the happening of an accident, the happening of the accident with its attendant circumstances may justify the inference of negligence. Thus, when the thing which produced the injury is under the control of the defendant or his servants and the injury would not have occurred unless negligence had been present in some form and the facts causing the injury are peculiarly within the knowledge of defendant and not equally accessible to plaintiff, the burden is on defendant to explain the cause of the accident, if he desires to escape from the inference of negligence."
In the instant case, the motor company, through its officers and employees, was in the exclusive possession and control of the garage and of plaintiff's automobile. The destruction of plaintiff's property was caused by the fire which started in or about the car while in defendant's garage; the fire did not occur in the ordinary course of events and the circumstances connected with and surrounding it imposed the duty on the defendant of showing that its occurrence was at least consistent with the exercise of due care on the part of its employees. If it was capable of an explanation, which would have destroyed the inference of their negligence, defendant should have offered the explanation, and since the circumstances connected with and surrounding the fire are such that, unexplained, force the conclusion that it was caused by defendant's negligence or want of care, the plaintiff is entitled to recovery for the damages incurred. The conclusions reached by this court in North River Ins. Co. v. H. H. Bain Roofing Co., Inc., La. App., 30 So.2d 139, are relevant and applicable to the facts of this case.
Defendant contends that its obligation in protecting plaintiff's automobile was that of a depositary, as provided in LSA-C.C. art. 2937, which provides:
"The depositary is bound to use the same diligence in preserving the deposit that he uses in preserving his own property."
Cited in support thereof is an opinion of this court in the case of Louisiana Fire Insurance Co. v. R. W. Hodge & Sons Garage, La.App., 42 So.2d 560, 561, 562, wherein it was stated:
"At the time of the runaway crash, the truck had been turned over to the defendant garage in order that necessary repairs might be performed. The Courts of Louisiana have considered the garageman's liability under these circumstances to be that of a depositary. Marine & Motor Insurance Co. v. Cathey, 8 La.App. 240."
The court, however, did not state that even in the case of a depositary the doctrine of res ipsa loquitur is inapplicable in any and all circumstances. The court concluded its opinion by saying:
"It is doubtful that the above rule would be applicable to the present case for the reason that the defective condition of the truck, which resulted in the accident, was shown by the record to have been in existence at the time the truck was delivered to defendant, and for a considerable time prior thereto.

*715 "Since the defendant produced evidence as to the manner in which the accident happened, and the record shows that there existed no want of care on the part of defendant's employee who was driving the truck at the time of accident, it follows that defendant has discharged any burden which the law placed upon him to exonerate himself from the inference referred to in the above quotation.
"Having found that the action of defendant's employee in beginning the test drive of the truck was not unusual or imprudent under the circumstances and that in doing so he was using no less diligence in preserving the deposit than he displayed in taking care of his own personal safety, and that the record establishes the cause of the accident, leaving no necessity for applying the rule as to burden of proof or inference of negligence, we conclude that plaintiffs' action is not well founded."
The defendant further relies upon the relationship of bailor and bailee for hire, as referred to in the cases of Livaudais v. Lee She Tung, 197 La. 844, 2 So.2d 232, and Miller v. Hammond Motors, Inc., La.App., 40 So.2d 29. In the former case, plaintiff had delivered to defendant a suit of clothes for cleaning and pressing and, upon calling for it, was informed the suit had been stolen. To plaintiff's action for the value of the clothes, defendant first filed a general denial and then tendered for filing an amended answer, especially averring that the theft of the suit was due to no fault or negligence on the part of the defendant or her employees. Objection to the filing of this supplemental answer or the introduction of any testimony in support of the allegations thereof was sustained and the Supreme Court granted a writ of certiorari. After stating the universal rule is that, where the relation of bailor and bailee for hire or mutual benefit subsists, it devolves on the bailee to use ordinary care and diligence in safeguarding the bailor's property and that he is answerable for such loss or injury resulting from failure to exercise such care, the court said [197 La. 844, 2 So.2d 233]:
"Thus it may be seen that the very basis of respondent's right to recover in the instant case was the failure of defendant to exercise ordinary care."
Accordingly, the court held that the defendant should have been permitted to offer any evidence tending to show that she exercised ordinary care or the lack or want thereof.
Also relied upon by defendant is the opinion of this court in the case of Anderson v. London Guarantee & Accident Co., Limited, La.App., 36 So.2d 741, 745, which was an action for injuries sustained by service station employees injured when a tire rim threw a spare truck tire into their faces while removing a flat tire for repairs. Even in that case the court adhered to the general and fundamental principles of the doctrine. The court said:
"* * * we again hold and declare that the presumption arising by virtue of the application of the doctrine must be rebutted by the defendant. In other words, the effect of the application of the doctrine is simply to charge a defendant with the burden of exculpating himself from a presumption of negligence.
"The question before us requires a finding as to whether defendant's assured has discharged the burden to the extent of clearing itself of liability resulting from negligence. * * *
"An essential element in the application of the doctrine of res ipsa loquitur is a showing that a defendant failed to use proper care as to the instrumentality under his control."
There was no departure, therefore, from the general principles of the doctrine involved.
Further cited in support of the defendants' contention is the case of Royal Ins. Co., Limited, of Liverpool, England, v. Collard Motors, Inc., La.App., 179 So. 108, 109, the stipulation of facts of which showed *716 that plaintiff's insured delivered to defendant his Dodge automobile for servicing and that while said automobile was in defendant's possession it was destroyed by fire. In our opinion, this decision supports plaintiff's position. The statements of Judge Janvier therein have equal application to the situation here. He stated:
"Defendant alleges its freedom from liability and, pointing to the well-established doctrine that a bailee without fault cannot be held liable for damage to nor destruction of property which forms the subject of the bailment, relies upon the fact that plaintiff is unable to show that the fire originated from a cause chargeable to the negligence of defendant, or of its employee.
"There is, unquestionably, a well-recognized rule that, in the usual case of loss by fire of articles in the possession of a bailee, the bailee, in order to avoid liability, need only point to the fire itself and that, then, the burden shifts to the bailor to show that the bailee was nevertheless not without fault either in connection with the origin of the fire, or in failing to take proper steps to extinguish it. This rule results from the principle that a bailee is not an insurer, need only afford to the articles intrusted to him `the same diligence in preserving the deposit that he uses in preserving his own property,' Civ.Code, art. 2937, and, therefore, may avoid liability by showing freedom from fault, which he may do by showing destruction by fire. It is contended, and those cases which support this view hold, that when he shows that a fire occurred, he raises a presumption of freedom from fault and shifts the burden to the bailor to show that there was, nevertheless, negligence on his part. Counsel for defendant states that the duty of the bailee is met when he `proves that the failure to return the property is due to destruction by fire,' and he says further that `in such cases the burden of showing wherein the bailee was negligent and breached a duty shifts to the shoulders of the bailor.' He relies upon certain cases involving destruction by fire. In McCullom v. Porter, 17 La.Ann. 89, the Supreme Court said:
"The accident by overpowering force being clearly proven, it was incumbent on plaintiff to sustain his demand, to show that the loss had been caused by the fault or neglect of the defendants.'
"In Scott v. Sample, 148 La. 627, 87 So. 478, 480, the same rule appears, stated as follows:
"It is true * * * that, where a bailee fails to return property intrusted to his care, he bears the burden primarily of showing why he has failed to do so. But, when he has shown that the cause was due to destruction of the bailed goods by fire, the burden again shifts to the shoulders of the bailor to show that the fire * * * was caused by the bailee's negligence.'
"While it is true that in Scott v. Sample the decision was not necessarily based on the rule now under discussion, still it is clear that the court approved the doctrine contended for by defendant as applied to general conflagrations.
"More recently, in Austin v. Heath, 168 La. 605, 122 So. 865, the court said:
"As the defendant, as bailee of the cotton, has shown that the cotton was destroyed by an overwhelming force, the burden of proof is on plaintiff to show that the fire originated or was permitted to spread through some fault or negligence on the part of defendant.'
"But, running through those decisions, there is in each a clear intimation that the cause of the fire and its general nature gave prima facie evidence of absence of fault on the part of the bailee, and in none of them do we find facts such as we notice here where there was no general conflagration. Here the fire originated entirely within the bailee's premises; it was limited in *717 its scopeconfined entirely not only to the interior of the premises solely within the control of the bailee, but, in fact, to the sole and single object which formed the subject of the bailment. It would indeed do violence to the reasons on which is established the general rule contended for by defendant to extend that rule to such facts. To do so would give to any bailee an `open sesame' whenever, through his carelessness, property intrusted to him might be burned. He could merely point to the fire, say, `I know nothing about it,' and rest secure, requiring the bailor, with the hardihood to persist in his claim, to prove that there had been negligence on the part of the bailee, which, having no knowledge whatever of the real facts, of course he could not do. We think it is a fairer rule, where such a limited fire occurs, that the bailee should, as he must in all other cases, prove his own freedom from fault and should not be permitted to rest on the proof of the fire alone. Of course, in doing so he need not ordinarily go so far as to show the actual cause. This is not required even of a carrier of passengers. Cusimano v. New Orleans Public Service, Inc., 170 La. 95, 127 So. 376. But, where the facts are so exclusively within his knowledge, he must show all facts of which he has knowledge and these facts must not involve negligence on his part.
"The implements which the bailee used in this casethe gasoline which, as we shall later show, was spilled on the floor, and the tools which were applied to the carwere so exclusively within the control of the bailee as to place upon it the burden of absolving itself from negligence."
After quoting from Jones v. Shell Petroleum Corporation, supra, the court stated:
"Counsel for defendant objects to the application here of the principles of the doctrine of `res ipsa loquitur' as discussed by the court in that case for two reasons: `First, becauseso counsel sayin the instant case the relationship is one of bailor and bailee, whereas in the cited case the lessor and lessee relationship was involved; and, secondly, because it appears from the dissenting opinion in the cited case that the doctrine of `res ipsa loquitur' was not properly involved there. This case is cited, not as authority for the application of the doctrine in suits by bailors against bailees, but merely as containing a very clear statement of the doctrine itself and of the reasons for its application in any case where those reasons exist. Wherever the rule is applicable, its application results from the same principlesthat he who exclusively has the evidence concerning the thing which, in his control and possession, causes the accident, is under the obligation of producing that evidence and exonerating himself from fault. Even in the dissenting opinion it was not contended that the rule was not properly stated, or that it is not applicable where the facts are exclusively within the knowledge of one of the parties and the thing which causes the accident is exclusively under his control.
"Those reasons exist here, and we conclude that, because of the circumstances surrounding the burning of the automobile, defendant was under the necessity of absolving itself from fault, and that mere reference to the fire, without showing, in addition, the absence of causal connection between the negligence of itself or of its employee and the fire, is not sufficient of free it from liability."
As we have heretofore observed, we found, from our examination of the record, facts, details and circumstances which we are unable to reconcile with due care on the part of the defendant, which might have caused the accident and were, as we have termed it, negligence. In view of the acts of negligence and the resulting *718 fire, the burden was on defendant to show clearly that it did not result from its negligence. We are not convinced this burden has been discharged and, consequently, are of the opinion there should be judgment in favor of the plaintiff for the damages sustained.
Next for consideration is the quantum of damages. Plaintiff neither appealed nor answered the appeal. Hence, the judgment could not be modified to his advantage. The defendant contends that the award should be reduced to no more than $400.
Although plaintiff's automobile had been driven 62,000 miles, it was evidently in fair condition as plaintiff felt justified in making expenditures for general repairs instead of purchasing a new car. Two automobile dealers, experienced in the used automobile market, testified in the case. One placed the value of similar automobiles in good condition at $700 to $750 and the other at from $700 to $850. The district court, undoubtedly using those estimates as a basis and considering the necessary expenses to place the automobile in a like condition, fixed the value at $600. We think the evidence amply supports this finding.
For the reasons assigned, the judgment appealed from is affirmed at appellants' costs.
On Rehearing.
Defendant complained in a motion for rehearing that the effect of our original opinion was to place upon the defendant a higher degree of proof than required by law; that, in effect, our holding was equivalent to making defendant an insurer, and that we overlooked defendant's obligations as a depositary prescribed by LSA-C.C. art. 2937. Defendant likewise questioned the correctness of our appreciation of certain facts in the case. The issues so sincerely and faithfully presented and urged merited our reconsideration of the matter in its entirety, which we have given.
In our original opinion, we accepted and applied the general statement of the rule of res ipsa loquitur (which we quoted), as approved by our Supreme Court in Jones v. Shell Petroleum Corporation, 185 La. 1067, 171 So. 447, 449, and as followed by the Supreme Court in Davis v. Teche Lines, Inc., 200 La. 1, 7 So.2d 365, 367. We are also in full accord and agreement with the further statement of the court in the Davis case, viz.:
"The rebuttable presumption or inference of negligence arising by virtue of the operation of this rule is predicated upon, and arises only in the absence of, an explanation by the defendant, but the presumption or inference is overcome and rebutted if the defendant's explanation is sufficient to rebut the inference that he had failed to use due care. The burden or duty of explanation is not satisfactorily to account for the occurrence and to show the actual cause of the injury, but merely to rebut the inference that he had failed to use due care. * * * It would be helpful, if the defendant could make the specific cause known, but in cases of this nature, where the cause is unknown to the defendant, it is sufficient explanation when the defendant shows that the occurrence did not result from his negligence or that he had [failed to use] due care.
"No hard and fast rule can be set, for the reason that the explanation must be governed by the peculiar facts and circumstance of each case. * * * In a case where no specific act of negligence is proven, and the plaintiff relies solely and only on the inference or presumption arising from the rule of res ipsa loquitur, all that could be required of the defendant is to give an explanation sufficient to rebut the inference or presumption of negligence. It would be unreasonable and unjust to cast the defendant where he has shown due care simply because he was unable to determine the exact cause of the fire."
*719 We also quoted with approval extensively from Judge Janvier of the First Circuit Court of Appeal in Royal Ins. Co., Limited, of Liverpool, England, v. Collard Motors, Inc., 179 So. 108, which, with the Jones and Davis cases, was cited and quoted as authority by Judge Janvier in Dupuy v. Graeme Spring & Brake Service Inc., La.App., 19 So.2d 657, 661, wherein it was additionally stated:
"But even where the fire is limited to the `sole and single object which formed the subject of the bailment' or `the thing which caused the injury complained of is shown to be under the management of defendant or his servants,' the burden which rests upon the bailee is not so onerous as to require that he show exactly how the fire originated. All he need show is his own freedom from fault. In Royal Insurance Co. v. Collard Motors [Inc.], supra, we said:
"`* * * Of course, in doing so he need not ordinarily go so far as to show the actual cause.'"
Concerning the degree of proof which one must offer, who, because of the doctrine of res ipsa loquitur, is under the duty of explaining such an occurrence, it was the holding of the Supreme Court in the Davis v. Teche Lines case that he need not show exactly what had caused the loss but could extricate himself from liability by merely showing his own freedom from fault. We pointed out in our original opinion that the doctrine of res ipsa loquitur is applicable in a bailor and bailee relationship. In the case of Pacific Fire Ins. Co. v. Eunice Motor Car Co., Inc., La.App., 46 So.2d 363, wherein a truck was placed in a garage for repairs and while therein was damaged by fire, it was specifically held that the doctrine of res ipsa loquitur applied. In disposing of an application for rehearing, 47 So.2d 403, the court stated:
"* * * we definitely state that we are not placing or attempting to hold defendant as an insurer. We are firm in our conviction that the doctrine of res ipsa loquitur applies in this case."
The doctrine of res ipsa loquitur is a rule of evidence imposing the burden of proof on the defendant under the pleadings and the facts and circumstances of this case of absolving itself from fault. The application of this rule does not serve as a substitute for evidence but does require the defendant to clear himself of the imputation and consequence of negligence, not, however, to the extent of showing the exact cause of the accident or fire. All it need do is to show its freedom from fault or to rebut the inference it failed to use due care.
The question dependent upon the proof offered is whether or not defendant has sustained its burden of proof. While it appears unnecessary to again recapitulate the facts, our re-examination of the record reveals that we were perhaps not too explicit in stating all the facts. We deem it, therefore, advisable to restate the facts as to some phases in more detail. Plaintiff delivered his automobile for general repairs to defendant's garage on a Saturday, where it remained in the garage over the week-end and until the following Monday morning, when work thereon began. On that day, the motor was removed and placed on a portable work bench, alongside and adjacent to the car; the battery cables were disconnected from the motor or other part of the car and laid forward on the fender; the fuel line from the gasoline tank was disconnected at the fuel pump. At the close of the day the relining of the brakes had been undertaken. In placing the motor on the work bench, the gasoline from the carburetor and whatever oil and gas were contained in and on the motor drained onto the bench, which had two wooden shelves covered with tin, one shelf near the bottom and the other at the top. An electric extension cord was left underneath the car during Monday night, or, at least, it was there, burned into pieces, on Tuesday morning following the fire.
*720 The evidence is not clear or convincing that this cord was disconnected or pulled from the wall socket the evening preceding the fire. Some of the employees testified it was their custom and duty to disconnect the electric wires and cords from the wall sockets during the noon hour and at the close of the day's work. The foreman testified that it was one of his duties to see that the cords were pulled from the sockets but that on this particular occasion he had no independent recollection and, therefore, could not positively say that he made such a check. One of the mechanics testified at first that following the fire, the extension cord was plugged in; later, that he was not certain but that it was his belief that it was plugged in. All of these were employees of the defendant and were called as its witnesses. The evidence shows that the extension cord underneath the car, as heretofore stated, was burned into two pieces, both ends of which were apparently undamaged and in good order. The wooden portions of the work bench were burned as were the tools and motor thereon.
The evidence also shows that none of the four mechanics employed the day preceding the fire and on the day of the fire made any investigation or examination to ascertain what may have caused the fire. They were interrogated specifically on the point, contenting themselves substantially with the statement they knew of no reason or cause for the fire, did not know how it originated and did not try to find out. The foreman, after first stating that he made no inspection or examination, later testified that he made an examination so as to determine that all the windows were closed on the car except the one on the driver's side, which was on the opposite side from the foreman while performing his work the night before. It seems their investigation was limited and confined to a casual look as they came to work. An examination of the burned car by defendant's mechanics, experts in their line, could have no doubt shone some light upon the matter and might have revealed the cause of the fire. In this particular, no explanation was given by defendant, and it would appear that some explanation should have been offered as to the electric wire underneath the car, the unconnected fuel line from the gasoline tank and the presence of the gasoline and probably oil or grease on the work bench and most probably dripping to the floor, in order to show defendant's freedom from fault or its use of due care involving a set of facts obviously dangerous.
From our examination of the record, facts and circumstances, detailed hereinabove and as recited in our original opinion, revealed conditions which we are unable to reconcile with due care and freedom from fault on the part of the defendant. The defendant has not in our opinion rebutted that inference of negligence supplied by the doctrine of res ipsa loquitur and should, therefore, bear the loss sustained by the plaintiff.
For the reasons herein assigned, our original judgment is reinstated and made the final judgment of this court.