HARDY, Judge.
This is a suit for the recovery of damages resulting from the destruction of personal property by fire allegedly caused by the negligence of the defendant, Dr. Henry H. Middleton, Jr., his agents and employees. Joined as a party defendant is Middleton’s public liability insurer, the Home Indemnity Company. After trial there was judgment in favor of plaintiff in the principal sum of $962, from which defendants have appealed.
The facts are entirely without significant dispute. Petitioner was the lessee from one Frank M. Dance of certain described property located in Claiborne Parish, Louisiana, and in a bárn on the premises had stored several hundred bushels of corn, some hay, several sacks of mixed feed and a lot of miscellaneous tools. The barn also housed several head of hogs and pigs owned by the plaintiff. In the fall of the year 1952 plaintiff sold a quantity of the corn *596 stored in the barn to the defendant, Middleton, at a price of $2 per bushel, and on October 10, 1952 the said defendant sent an employee, one Ed or Rex Barnes, in charge of defendant’s 1950 Chevrolet %-ton pickup truck, to load the purchased corn from the barn to the truck. On this mission Barnes was accompanied by a young colored boy, eleven or twelve years of age, by the name of- Oliver Ceasar. Some time shortly after noon on the date set forth Barnes backed the Middleton truck up to the barn and there parked the vehicle by leaving it in gear, after shutting off the ignition, in such position that the truck faced down a sloping grade away from the barn. Barnes and Ceasar then proceeded to the task of loading the truck with corn. In this operation Barnes repaired to the loft or upper floor of the barn where the corn was stored, where he filled a tub with ears of corn, lifted the same to a window opening above the truck and dumped the corn into the bed of the truck where it was tramped down and packed by young Ceasar. After being so engaged for a space of some two hours, more or less, Barnes was attracted by a shouted call from Ceasar to the effect that the truck was on fire. Rushing to the window Barnes lowered himself therefrom and upon dropping to the ground rushed to the cab of the truck which he discovered to be in flames, rising, according to his testimony, principally from the floorboard and the cushion of the seat. After an ineffective attempt to smother the flames by throwing dirt thereupon, Barnes reached into the cab, pulled out the flaming seat cushion, which he threw upon the ground a little distance from the vehicle, and then “took off” at a run from the scene of the conflagration, followed by Ceasar. Barnes testified that he was heading for the 'road in order that he could summon help. After this unceremonious departure the fire continued its destructive course and completely consumed truck, barn and contents.
Invoking the doctrine of res ipsa loquitur plaintiff alleged the negligence of defendant Middleton’s employee as the cause of his 'loss, asserting that the truck in which the fire originated was at the time under the complete custody and control of Middleton’s employee. .Plaintiff relies upon the effect of the application of the doctrine and upon the failure of the employee Barnes to take action by releasing the gear shift of the truck, which would have permitted it to roll by force of gravity away from the barn and would have prevented the destruction of the building and its contents.
Counsel for defendants urgently contend that the responsibility placed upon the defendants by application of the doctrine of res ipsa loquitur has been adequately discharged and that it has been established that the fire was not due to any negligence on the part of Middleton o'r his employees.
The jurisprudence of our state is replete with cases involving the doctrine of res ipsa loquitur, among which we particularly note Maus v. Broderick, 51 La.Ann. 1153, 25 So. 977; Lykiardopoulo v. New Orleans & C. R. Light & Power Co., 127 La. 309, 53 So. 575; Rome v. London & Lancashire Indemnity Company of America, La.App., 169 So. 132; Pizzitola v. Letellier Transfer Co., La.App., 167 So. 158; Loprestie v. Roy Motors, Inc., 191 La. 239, 185 So. 11; Jones v. Shell Petroleum Corporation, 185 La. 1067, 171 So. 447; Royal Ins. Co. v. Collard Motors, Inc., 179 So. 108; Gulf Ins. Co. v. Temple, La.App., 187 So. 814; Davis v. Teche Lines, 200 La. 1, 7 So.2d 365; Gerald v. Standard Oil Co. of Louisiana, 204 La. 690, 16 So.2d 233; Roy v. Louisiana State Department of Agriculture & Immigration, 216 La. 699, 44 So.2d 822; Smith v. United States, 5 Cir., 96 F.2d 976; Asprodites v. Standard Fruit & Steamship Co., 5 Cir., 108 F.2d 728; Daroca v. Metropolitan Life Ins. Co., 5 Cir., 121 F.2d 917; New Orleans & N. E. R. Co., v. McEwen & Murray, 49 La.Ann. 1184, 22 So.675, 38 L.R.A. 134; Mercer v. Tremont & G. Ry. Co., La.App., 19 So.2d 270; Anderson v. London Guarantee & Accident Co., La.App., 36 So.2d 741; Dupuy v. Graeme Spring & Brake Service, La.App., 19 So.2d 657; Vallette v. Maison Blanche Co., La.App., 29 So.2d 528, 529; Piacun v. Louisiana Coca-Cola Bottling Co., La.App., 33 So.2d 421.
The latest consideration by this court of the application and effect of the doctrine of *597 res ipsa loquitur is found in the case of Leigh v. Johnson-Evans Motors, Inc., 75 So.2d 710, recently decided on rehearing. The Leigh case also involved a matter of loss by fire and was in many respects similar to the case at bar.
Renewed consideration of the above and other cases involving the effect of the doctrine of res ipsa loquitur leads us to the following conclusion:
(1) That the doctrine is properly applied under such circumstances as establish the fact that the offending agent or instrumentality was in the possession and control of defendant, his agents or employees;
(2) That the cause or causes of the occurrences were unknown to plaintiff and could not reasonably have been expected to be within his knowledge.
When the above factors are established the application of the rule then requires :
That the burden of evidence shift to the defendant.
After this shift in the responsibility for bearing the burden of proof has been effected, the responsibility devolves upon the party charged either:
(a) To show the effective cause of the occurrence and his freedom from negligence in connection therewith, or,
(b) To show that the cause could not reasonably have been foreseen and reasonable precautions taken to prevent its occurrence, or
(c) That the cause is unknown and that he has been free from any negligence which could have caused or contributed to the loss.
It is further to be observed that the application of the doctrine to a given case automatically carries with it the imputation of negligence against the parties charged, from the effect of which imputation he is required to exculpate himself by convincing proof.
Implicit in the above is the conclusion that the mere application of the doctrine, as has been many times reiterated, cannot be considered as a substitute for proof.
In consequence of the consideration of the above elements it is clear that the proof of cause, coupled with a showing that the party charged, was free from actionable negligence serves as a complete exoneration. But it does not follow as a corollary that a negative showing of freedom from negligence is sufficient to effect the same result.
We think it is also proper to conclude that in cases where the party charged with the burden of evidence originating from his possession and control of the offending instrumentality stops short of adducing all the evidence within his power, that he cannot then be held to have adequately discharged his burden.
In the instant case we are impressed with the pertinency of the principle last above enunciated, in that these defendants did not present all of the evidence within their power. We do not think the significance of defendant’s failure to tender Oliver Ceasar as a witness can be escaped. No effort was made to explain the reason, if any existed, for this failure. We learn from briefs of counsel that the young negro was present in court, having been summoned as a witness on behalf of defendants. He was an important witness because it was he who discovered the existence of the fire and who, by outcry, notified defendant’s employee Barnes of the danger. It is only reasonable to assume that if Ceasar discovered the fire he most certainly was in the best possible position to testify with reference to its origin, and defendant’s failure to present such testimony militates strongly against the conclusion of their freedom from negligence.
Counsel for defendants argue that the doctrine of “equal availability” of the individual as a witness for plaintiff or defendant, under which circumstance the presumption that the witness would have testi *598 fied adversely to the defendant, would not arise, citing in support of this proposition Bordelon v. T. L. James & Co., Inc., La. App., 148 So. 484;. Kendricks v. Lewis, La. App., 175 So. 484; Duet v. Tramontana, La. App., 26 So.2d 324; .Chapman v. Travelers Indem. Co., LaApp., 45 So.2d 557; Ens-minger v. New Orleans Public Service, La. App., 65 So.2d 402, and Indiana Lumbermen’s Mutual Ins. Co. v. Darcental, La.App., 70 So.2d 460. We do not find that the cited cases are apropos under the facts here reflected. Inasmuch as Ceasar was summoned by defendants, certainly it would not be reasonable to charge plaintiff with the responsibility of taking over the witness on his own and plaintiff could not have known that defendants did not plan to use the summoned witness. A further circumstance which detracts from the contention of counsel for defendants is the representation in brief of counsel for plaintiff that when he attempted to talk to Ceasar the boy advised him that he had been instructed not to discuss the case with them and they were therefore unable to extract any information.
Under our appreciation of the established facts, coupled with the presumption arising from defendant’s failure to call Ceasar as a witness, we are convinced that defendants have failed to rebut the presumption of negligence and, accordingly should be held liable.
Finally, we think there is one other circumstance which must be regarded as negligence, that is, the failure of the employee Barnes to take the admittedly simple and obvious step of releasing the gear of the truck and permitting it to roll away from immediate proximity to the barn. That this would have prevented the destruction of the barn and its contents must be accepted as an irrefutable conclusion. It is contended that Barnes’ failure to take this action was a mere error of, judgment under emergent conditions. We do not find it so, and it is obvious tó us that Barnes was not guilty of a passive error in judgment but was guilty of gross neglect in this connection.'
. In connection with the quantum, diligent counsel fo'r defendants point out that the record is devoid of proof as to the value of the two stacks of peanut hay for which plaintiff claimed reimbursement in the sum of $50. Review of the record convinces us that this contention is sound and it follows that the judgment in favor of plaintiff should be reduced to this extent.
For the reasons assigned the judgment appealed from is amended by reducing the amount allowed plaintiff to the sum of $912, and as amended, the same is affirmed at appellant’s cost.
AYRES, J., recused.