BOLIN, Judge.
The plaintiff is a rice farmer who, at the time of this suit, was engaged in the growing and harvesting of rice, both for seed and commercial purposes, in East Carroll Parish, Louisiana. He instituted the suit herein for damages in the sum of $11,783.-65, against H. D. Sims, d/b/a Sims Seed Cleaning Plant, alleging that between the dates of September 10, 1953, and October 4, 1953, he delivered to the defendant’s plant at Rayville, Louisiana, approximately One Thousand Nine Hundred Eighteen bushels of green rice, of the “Blue Bonnet” variety; that all of said rice was of a superior grade, in excellent condition, and contained the proper moisture content for the defendant to properly mill, dry and store same in order to make seed rice therefrom, but that notwithstanding the good condition of this green rice, the defendant damaged the same in the drying and storage process by the use of excessive heat, improper milling, or otherwise.
*841 It is the plaintiff’s contention that his rice was heat and stack damaged while in the possession and control of the defendant, and that as a result its germination qualities were destroyed; that its sale value was lessened thereby because said rice was ultimately rated unfit for use as seed rice or commercial rice. Plaintiff specifically pleads that the doctrine of res ipsa loquitur is applicable herein. In this connection, it is alleged that “the green rice, in good condition, is of such nature that damage to it in the drying or storage process by excessive heat, improper aeration, or otherwise, could have only been occasioned by some act of negligence on the part of a person in whose possession the rice was at the time of the damage.” Plaintiff further contends that the rice was delivered to the defendant in good condition and the plaintiff exercised no control or supervision over the same thereafter, and while it was at defendant’s mill.
In the alternative, plaintiff averred that if the court should hold that the doctrine of res ipsa loquitur is not applicable, that the defendant should be held liable upon certain specific allegations of negligence, particularly by failing to pass the seed rice through the drier the proper number of times, for neglecting to turn, stir, and aerate said rice, and by not properly supervising and attending the operations in connection with the drying process.
The plaintiff alleged that about fifty-five per cent of his 1953 rice crop was sent to the East Carroll Grain Co-op Association, at Lake Providence, Louisiana, where it was properly cured and dried, and was in due time graded and classified by the proper United States and Louisiana Agriculture officials as “Blue Bonnet, No. 1, with premium”, and that such rice, so graded and classified, had a market value of $3.05 per bushel as seed rice. The plaintiff further alleged that the rice which was processed at the East Carroll plant was cultivated, grown and produced at the same time, on the same fields, under similar conditions, and was identical in every respect at the time it was delivered to the plants in question.
Plaintiff said that he had obtained a commodity loan from the United States Department of Agriculture on all of the rice which was processed at the defendant’s, plant in the total sum of $26,420.65. He,, therefore, based the amount of damages on the difference between what he ultimately received from the United States Department of Agriculture under his commodity loan and the amount he could have received on the market for said rice if it had not been damaged, which he claimed to be $3.05, or the total sum of $38,204.30; this difference of $11,783.65 being the amount sued for.
In his answer the defendant admitted the receipt of the quantity of green rice for the purpose alleged, but denied he was guilty of any negligence. In his answer he also affirmatively alleged that at the time the green rice was delivered to him he advised the plaintiff that the possibility of making seed rice from same was not good because of the great quantity of cracked, low grade, and different varieties therein, including red rice.
There were no exceptions, motions, or other dilatory pleadings, and upon the issues as set forth above, the case was tried. The trial court, in a written opinion, concluded that the doctrine of res ipsa loq-uitur was inapplicable; that the damages complained of were not shown by a preponderance of the evidence to be caused by the negligence of the defendant, and, therefore, the plaintiff’s demands were rejected at his cost. The court below also went further in its written reasons for judgment, and found that the plaintiff had exculpated himself from any presumptions of negligence in the event the doctrine of res ipsa loquitur had been applicable.
In his appeal the plaintiff assigns two errors in the findings of the trial court. It is first contended that the lower court erred as a matter of law in holding that the doctrine of res ipsa loquitur was inap *842 plicable to the factual situation of this case. Secondly, it was contended that the lower court committed manifest errors in its resolutions of the facts.
We will first dispose of the question of whether or not the facts of this case justify the application of the doctrine of res ipsa loquitur. The esteemed counsel for the plaintiff and defendant have favored this court with excellent and exhaustive briefs on this question, and they also presented very forceful and enlightening oral arguments which have been helpful to us in considering this cause. A determination of a proper instance for the application of this principle has caused much confusion throughout those jurisdictions which accept the doctrine and has been the subject of much discussion by legal scholars.
The doctrine is stated in Leigh v. Johnson-Evans Motors, La.App. 2 Cir., 1954, 75 So.2d 710, 713, thusly:
“When a thing which causes injury without fault of the injured person is shown to be under the exclusive control of the defendant and the injury or damage as such in the ordinary course of things does not occur if the one having such control uses proper care, then the injury or damage arose from the defendant’s want of care.”
Judge Hardy, as organ of this court, stated in Carter v. Middleton, La.App. 2 Cir., 1954, 76 So.2d 594, 597:
“(1) That the doctrine is properly applied under such circumstances as establish the fact that the offending agent or instrumentality was in the possession and control of defendant, liis agents or employees;
“(2) That the cause or causes of the occurrences were unknown to plaintiff and could not reasonably have been expected to be within his knowledge.”
There are two main problems that have troubled the courts in the consideration of this doctrine, namel}': (1) When is the doctrine properly applicable; and (2) what effect to give to it when it is applied.
Chief Justice Fournet stated the doctrine in Larkin v. State Farm Mutual Automobile Ins. Co., 1957, 233 La. 544, 97 So.2d 389, 391 as:
“ * * * All that is meant by res ipsa loquitur is ‘that the circumstances involved in or connected with an accident are of such an unusual character as to justify, in the absence of other evidence bearing on the subject, the inference that the accident was due to the negligence of the one having control of the thing which caused the injury. This inference is not drawn merely because the thing speaks for itself, but because all of the circumstances surrounding the accident are of such a character that, unless an explanation can be given, the only fair and reasonable conclusion is that the accident was due to some omission of the defendant’s duty.’ Annotation, 53 A.L.R. Res Ipsa Loquitur — Nature, 1494 at page 1499; * *"
In order to properly apply the doctrine, the possible or probable causes of the injury must be under the control of the person sought to be charged. 38 Am.Jur. Neg. § 300. In other words, the presumption arises not alone from the fact that an injury has been inflicted, but from the cause of the injury, or other surrounding-circumstances as well. See 59 A.L.R. 468, at page 473.
Therefore, the question of whether the doctrine is applicable to any special case is a mixed question of law and fact. The trial court found that the doctrine relied on by plaintiff did not apply under the facts of this case. In our opinion, he so found because the circumstances were not such as to lead one to believe that in common experience such damage would not have occurred except for negligence on the part of the defendant. In other words, plaintiff alleged but did not *843 prove, to the satisfaction of the court below, by a preponderance of the evidence that the damage to his rice was done while it was in the exclusive control of the defendant. Instead, the record shows that the damage could have resulted from several factors not in the control of the defendant, such as high moisture content, disease, etc., prior to being placed in the hands of defendant; thus, precluding the application of the doctrine and the inferences thereunder. In this connection, we quote from the written findings of our learned brother below:
“In this case, the defendant did not have the rice in his possession and control at all times, because as stated above, the said rice was planted, grown, cultivated, harvested and hauled by the plaintiff. If the rice in question was actually inferior or below certification standards as seed rice, according to the requirements of the Louisiana Department of Agriculture, then, in the opinion of this Court, in that event, it can not be held with any degree of certainty that the failure of said rice to meet certain rigid specifications was due to any act of negligence, commission or omission, on the part of defendant. The said rice was not exclusively in the control and possession of the defendant and the defendant was not in exclusive control of the agency or agencies that could have caused damage, if any, to the said rice. Therefore, this Court is of the opinion that the doctrine of res ipsa loqui-tur is inapplicable to the factual situation of this case.”
In our opinion the record justifies the lower court’s conclusion that the doctrine of res ipsa loquitur was inapplicable to the facts of this case.
Since for our purposes here, the problem of the effect of the application of the doctrine of res ipsa loquitur is not relative, that question will not be discussed.
Plaintiff further contends that defendant breached his duty as a bailee of the rice placed in his hands. The duty of one under such circumstances is said to be to use ordinary care and diligence in safeguarding the bailor’s property and that he is answerable for such loss or injury resulting from failure to exercise such care. Livaudais v. Lee She Tung, 1941, 197 La. 844, 2 So.2d 232.
Plaintiff argues, and correctly so, that the inferences and burden of proof are the same whether the theory is characterized as res ipsa loquitur or simply as the obligation of the bailee. If the plaintiff shows that he delivered sound goods to the bailee which were damaged while subject to the bailment, the bailee must exculpate himself by showing he was free from fault in the care of the goods. See Leigh v. Johnson-Evans Motors, supra, also Holder v. Lockwood, La.App. 2 Cir., 1957, 92 So.2d 768, rehearing denied.
The lower court found that the plaintiff did not sustain the burden of proving that the rice was delivered into the hands of defendant in an undamaged condition. Therefore, the inferences relied on by plaintiff can not be properly applied. The trial court found that defendant, in fact, exculpated himself from liability by showing that he was free from fault but we do not need to consider whether the same is supported by the law and the evidence under the rulings announced above.
This brings us to the consideration of a second specification of error complained of by the appellant, and that is whether the court below committed manifest error in its conclusion that plaintiff had failed to show by a preponderance of the evidence that the damage was caused by the negligence of the defendant.
In this connection, Mr. R. L. Sims, an employee of the defendant, testified in detail as to the procedure followed in connection with the drying of the plaintiff’s rice after it was received at the defendant’s plant. His testimony was that no excessive temperature was reached at any time during the process, and that the rice *844 was handled to the best of their ability and in accordance with the best methods known to the industry. He said that the defendant had done everything possible to make seed rice from the green rice delivered to it by the plaintiff. In connection with his testimony, there was introduced into evidence a note book upon which a daily log was kept as it related to the processing of the rice in dispute herein. This book was very neatly and orderly kept and all entries therein were made by R. L. Sims and corroborated his testimony. Counsel for the plaintiff has strenuously contended on appeal that this daily log was a fraud. This charge being based principally upon the fact that the book was entirely too neat and well-kept to have been in constant use in and around the rice plant; and further, that a cursory examination of same would show that each daily entry therein was made with the same pencil. The court below, in its written reasons, made no mention of counsel’s contention in regard to this document, and we have, therefore, been requested to pass on this question. While we do not feel that the question of whether this entry book was genuine is necessarily decisive of the question herein, we have no hesitancy in stating that it appears to be genuine. The district judge was seemingly well impressed with the testimony of R. L. Sims, as evidenced by his frequent reference to same in his written opinion. He apparently did not feel that the witness had made any fraudulent entries in the book in question, and we are of the same opinion
The testimony of the defendant corroborated in every important detail that of R. L. Sims. He testified that the plaintiff’s rice was processed in accordance with the best methods known to the industry and also in accordance with the plaintiff’s specific instructions. He also stated that he never promised the plaintiff anything except that he would do all that he could in an effort to make seed rice from that which was delivered to him.
The defendant also offered the testimony of Mr. William Kiesel, Jr., as an expert in the field of the proper methods of processing seed rice. It was his conclusion that the rice in question had been properly handled, and that its failure to make seed rice resulted from causes other than the manner in which it was processed. Of course, plaintiff contends that the lower court was in error in accepting Mr. Kiesel as an expert, but we can see no basis for this contention because he was a man of vast technical experience and also had sufficient formal education.
The court below concluded there was a strong possibility that the plaintiff’s rice was co-mingled with rice belonging to Mr. Grady Oswalt, and, therefore, all of same that was graded and certified as seed rice at the East Carroll plant might not have been that of the plaintiff. The appellant contends that such a conclusion was erroneous and not supported by the evidence. Our study of the record supports this conclusion inasmuch as there was testimony to the effect that the rice of plaintiff and Oswalt was stacked together after it was bagged and that the samples which were taken from the bagged rice, therefore, could have very easily been confused with that belonging to Mr. Oswalt.
We see no reason to go into a more detailed discussion of the testimony of the various witnesses which was offered in the court below. We are in complete accord with the following conclusion reached by the trier of facts:
“In the opinion of this Court, the record does not satisfactorily establish that plaintiff’s rice was damaged to any extent by any act of negligence, commission or omission, on the part of defendant and his employees. However, the evidence does rather convincingly lead us to the conclusion that any inferiority in plaintiff’s rice, which caused it to fail to meet certification requirements because of low *845 germination and/or other varieties, was due to disease and other factors over which defendant had no control.”
The judgment of the district court in favor of the defendant, H. D. Sims, d/b/a Sims Seed Cleaning Plant, and against the plaintiff, Alfred, J. Hardey, rejecting his demands is affirmed at the appellant’s cost.
Affirmed.