182 So.2d 102 (1966)
Frank RANCATORE
v.
William EVANS, d/b/a Bill Evans Speed Shop, and Maryland Casualty Company.
No. 2018.
Court of Appeal of Louisiana, Fourth Circuit.
January 10, 1966.
Rehearing Denied February 7, 1966.
*103 Jackson P. McNeely, New Orleans, for plaintiff-appellant.
Deutsch, Kerrigan & Stiles, Francis G. Weller, New Orleans, for Maryland Cas. Co., defendant-appellee.
Niels F. Hertz, Jr., New Orleans, for William Evans, defendant-appellee.
Before McBRIDE, SAMUEL and CHASEZ, JJ.
McBRIDE, Judge.
On April 18, 1963, a 17-foot 1960 model fiberglass boat hull belonging to Frank Rancatore was totally destroyed by fire at the premises of defendant Evans where it had been left by its owner for the purpose of having Evans change motors in the boat and paint the bottom. Rancatore filed this suit against Evans and his alleged liability insurer in solido to recover the value of the boat, $2000, plaintiff pleading the doctrine of res ipsa loquitur. Evans disclaimed negligence; the defendant-insurer denied its policy covered plaintiff's boat.
After a trial on the merits, plaintiff's demands were dismissed, no written reasons being assigned by the trial judge. Plaintiff appealed from the judgment.
The boat was left with Evans about April 12, 1963; on the day of the fire, plaintiff visited Evans' place of business to ascertain when the boat would be ready inasmuch as he earned his living as a commercial fisherman. After checking the progress of the work, plaintiff left the situs of the boat and was washing his hands in a dressing room somewhat removed therefrom, when he heard a sort of explosion. He turned to see the boat on fire, the flames ultimately destroying it.
Joseph Campagne, an employee of Evans, was the only person who knew or could be expected to have known anything about the explosion and subsequent conflagration. He had removed the smaller motor from the hull and had lowered a larger motor thereinto. After the new motor had been lowered, Campagne removed himself from the boat to get some tools, and the explosion occurred as he was getting back into the boat. He declares he knows nothing of the cause of the explosion.
The first question that presents itself is which of the parties carries the burden of proof as to the workman's negligence vel non. The law provides that a bailee is not an insurer, and need only afford to the articles entrusted to him "the *104 same diligence in preserving the deposit that he uses in preserving his own property." R.C.C. art. 2937. Which could only mean that the depositary must use ordinary care such as is expected of a prudent man. Fireman's Fund Indemnity Company v. Sigard, La.App., 129 So.2d 258.
Under the circumstances of this case, the law exacts of defendant Evans the duty of explaining away any negligence on his part, and in the absence of a satisfactory explanation, Evans' employee must be deemed guilty of negligence. The fire originated entirely within the bailee's premises; it was limited, i. e. confined entirely to the boat, of which the bailee had control and possession. In Jones v. Shell Petroleum Corporation, 185 La. 1067, 171 So. 447, 449, the Supreme Court, citing 45 C.J. § 768, p. 1193, said:
"Where the thing which caused the injury complained of is shown to be under the management of defendant or his servants and the accident is such as in the ordinary course of things does not happen if those who have its management or control use proper care, it affords reasonable evidence, in absence of explanation by defendant, that the accident arose from want of care. * * *"
Many decisions are to the effect that where the fire originates entirely within the depositary's premises and is confined to the subject matter of the deposit, the depositary is held to strict proof of his freedom from fault; otherwise, he is to be deemed guilty of negligence. Pacific Fire Ins. Co. v. Eunice Motor Car Co., La.App., 46 So. 2d 363, rehearing refused 47 So.2d 403; Dupuy v. Graeme Spring & Brake Service, La.App., 19 So.2d 657; Gulf Ins. Co. v. Temple, La.App., 187 So. 814; Royal Ins. Co., Limited, of Liverpool, England v. Collard Motors, La.App., 179 So. 108.
No testimony emanated from Campagne, Evans or anyone else that would absolve Campagne from negligence in connection with the destructive fire. Campagne's only explanation is that he "doesn't know."
We have carefully read the evidence and not only conclude that there was no reasonable explanation which would exculpate Campagne of negligence, but contrariwise, his own testimony leads us to the strong belief he was guilty of the grossest of negligence. Plaintiff's boat was propelled by a gasoline consuming motor. The interior of the hull reeked with gasoline fumes, and Campagne freely admitted that the clothing he wore also smelled strongly of gasoline. Campagne, about ten days after the accident, made a statement to a representative of defendant-insurer to the effect that he heard sparks emitting from the end of the battery cables near the center of the boat, and from the witness stand he stated that: "* * * when I stepped into the boat I heard something and evidently it had to be a sparkI thought it was my shoesand something exploded." It is a matter of common knowledge that gasoline, a volatile liquid, is high in combustible characteristics, and its fumes will ignite and explode from a spark or flame. Under the circumstances shown, we think that Campagne, had he been a prudent individual, would have disconnected the battery so it would not emit sparks which were capable of igniting the congregated gasoline fumes. See Andrepont v. Ochsner, La.App., 84 So.2d 63. We have no doubt that it was this negligence which caused the destruction of plaintiff's property, and Evans, as the depositary, must be held responsible in damages under the doctrine of respondeat superior.
The value of the hull clearly appears. Rancatore purchased it new about a year or so before the fire, the total price thereof being $3034.02. He testified that at the time of the loss, the value of the hull would have been not less than $2500. Evans admits to being an expert on boats and thought the hull in question was "in good shape" and was worth, exclusive of the engine, $2000. This is the amount plaintiff claims, *105 and he is entitled to judgment against Evans for said amount.
A much controverted point is whether Maryland Casualty Company, the insurer-defendant, must respond to plaintiff under the liability policy it issued covering Evans' garage business. Said insurer contends the policy affords no coverage of plaintiff's loss and that it cannot be cast in this case. The pertinent portion of the contract of insurance is labeled "Garage Liability Policy." On a page denominated "Declarations" appear the following words and figures:
"III Garagekeepers' Legal Limit of liability includes
 Liability $5000 limit for loss to property
 other than automobiles
 "E. Fire and Explosion $17.00
 INCL.
 "F. Theft of the entire Specific limit per location as
 automobile stated in Item 5 subject to:
 "G. Riot and Vandalism $25 vandalism deductible
 "H. Collision or Upset $ deductible."
 Under the insuring clauses appear:
 "PART IIIGARAGEKEEPERS' LEGAL LIABILITY
"Coverage EFire and Explosion.
"Coverage FTheft of the entire automobile
"Coverage GRiot, Civil Commotion, Malicious Mischief and Vandalism.
"Coverage HCollision or Upset.
 "The company will pay on behalf of the insured all sums which the insured
shall become legally obligated to pay as damages because of:
"E. loss to an automobile caused by fire or explosion other than explosion of
 tires;
"F. loss to an automobile caused by theft of the entire automobile;
"G. loss to an automobile caused by riot, civil commotion, malicious mischief
 or vandalism; * * *
"H. loss to an automobile or other property of a kind customarily left in charge
 of a garage caused by collision of the automobile or such property with another
 object or by upset thereof, * * *
occurring while such automobile or other property is in the custody of the insured
[Evans] for safekeeping, storage, service or repair * * *."
(Word in brackets ours.)
We are in agreement with counsel for the Maryland Casualty Company; there was no policy coverage. The policy does not extend the insurer's liability to the loss of plaintiff's hull. Under the plain language of the policy, Coverage E applies when *106 an automobile is lost by fire or explosion, Coverage F applies when an automobile is lost by theft, Coverage G applies to riot, civil commotion, etc., and Coverage H only applies to an automobile or other property customarily left in charge of a garage when the loss is caused by collision of the automobile or such property while in the custody of the insured for safekeeping, storage, service or repair. Nowhere under Coverages E, F, G, or H or elsewhere is there any stipulation that the insurer is or intended to be liable for the loss of a boat by explosion or fire.
Counsel for plaintiff, joined by counsel for Evans, contends that a portion of the policy (pointing to the above-quoted language from the Declarations) indicates that the insurance company is liable for the loss of the boat, arguing that a boat is "property other than automobiles" and that whereas the $5000 limitation appears opposite "E. Fire and Explosion," plaintiff's loss is covered. Counsel say alternatively that if there is any doubt as to the meaning of the quoted language from the Declarations, then an ambiguity exists in the policy and that such ambiguity and the doubt it engenders must, under the well-established rule of law, be construed liberally in favor of the insured and against the insurer. Thus, counsel are endeavoring to pluck from the Conditions one isolated clause which they say intimates such coverage. They, however, overlook the fact that the initial provision of the policy reads:
"In consideration of the payment of the premium, in reliance upon the statements in the declarations made a part hereof and subject to all of the terms of this policy, agrees with the insured named in the declarations as follows:" [Italics ours.]
The insuring clauses are as much a part of the contract as are the Declarations. To hold that because the Declarations stipulate a limitation of $5000 liability on "property other than automobiles" the boat was covered against the peril of explosion or fire, would be in effect writing out of the policy the insuring clauses which minutely set forth the undertakings of the insurer. An insurance policy must be construed as a whole and in its entirety, and a single clause cannot be accepted at the expense of disregarding other pertinent clauses. Harmon v. Lumbermens Mutual Casualty Company, 247 La. 263, 170 So.2d 646; Hemel v. State Farm Mut. Auto. Ins. Co., 211 La. 95, 29 So.2d 483; Barnett v. City of Monroe, La.App., 124 So.2d 249. A reading of the whole policy discloses no ambiguity therein whatsoever, as Part III of the Declarations (Garagekeepers' Legal Liability) may be read in complete harmony with the insuring clauses. It is manifest, after analyzing the entire policy, that when the insurer stipulated in the Declarations a limit of $5000 liability for the loss of "property other than automobiles," the insurer was merely placing said limitation of liability on losses which might arise under Coverage H pertaining to collision or upset.
Gordon v. Unity Life Ins. Co., 215 La. 25, 39 So.2d 812, involved a suit for the proceeds of a life insurance policy. The dispute concerned an exclusion found in the incontestable clause. The Supreme Court said:
"Subject to the laws and statutes of this state, a policy of insurance is a voluntary contract between the parties thereto. The parties may make it on such terms, and incorporate such provisions and conditions, as they see fit to adopt, and the contract as made measures their rights. See Lado v. First Nat. Life Ins. Co., 182 La. 726, 162 So. 579. * * *
* * * * * *
"In our opinion, the insurance policy in the instant case in clear and unambiguous language provides that the riskthat is, death by venereal diseaseis not covered by the contract. The Court of Appeal so found, and we think correctly so."
*107 A contract of insurance is like any other contract; where no ambiguity or doubt exists therein, it is to be enforced as written. It is the law between the parties and is the measure of their rights and responsibilities. R.C.C. arts. 13 and 1901; Hemel v. State Farm Mut. Auto. Ins. Co., supra; Parks v. Hall, 189 La. 849, 181 So. 191; Dorsett v. Thomas, 152 La. 60, 92 So. 734; Cotton Bros. Cypress Co. v. Home Ins. Co. of New York, 147 La. 308, 84 So. 792; Wallace v. Insurance Company, 4 La. 289.
Counsel for plaintiff further contends, also in the alternative, that Gohres, the agent of the insurer, before the issuance of the policy knew that Evans repaired marine motors in his garage establishment and that Evans, in seeking liability coverage, informed Gohres that he desired a policy that would protect him in all of his activities, including the repairing of marine equipment. It is claimed that Gohres represented to Evans that the policy would fully protect him in all activities in his garage. It is then argued by counsel for plaintiff that whereas the agent of the insurer did not issue a policy fully protecting Evans such as he sought, then we should hold that the insurer, due to the misrepresentation or neglect of its agent, is liable for plaintiff's loss to the same extent as though the proper policy had been issued. Gohres, appearing as a witness for the insurer, admitted he knew Evans handled the repairing of marine equipment; he testified, however, that there is no type of policy written by his company which would protect Evans in such pursuit. He stated further that he told Evans that the policy did not afford coverage on boats worked on in the garage.
There is hopeless conflict in this testimony of Gohres and that of Evans as to what kind of policy should have been issued. However, we note that the testimony of Evans was adduced while he was on cross-examination by plaintiff's counsel under C.C.P. art. 1634. In other words, plaintiff is basing his argument that there was misrepresentation on the part of Gohres as to the type of insurance policy and coverage thereunder on the testimony of Evans given on cross-examination conducted by plaintiff's counsel under C.C.P. art. 1634. The interests of plaintiff and Evans regarding insurance protection are identical, and of course, it behooves each to show that the nature of the policy was misrepresented by Gohres. Plaintiff seeks to make his point by using the testimony of one defendant given on cross-examination against the other defendant, the insurer. This he cannot do. The law is plain that the testimony of one defendant given under such cross-examination may not be used against any other co-defendant. This rule was laid down in Edwards Bros. v. Berner, 154 La. 791, 98 So. 247. There the Supreme Court had this to say about the then prevailing statute pertaining to the right to cross-examine an adverse party:
"* * * The statute (Act 126 of 1908) grants the right to a litigant to examine his opponent, as under cross-examination, without being held as vouching to the court for the credibility of the opponent so placed upon the stand, or as being estopped in any lawful way from impeaching the testimony given by such adversary. The statute does not extend the right and privilege of a litigant to cross-examine one defendant as against his codefendant. * * *"
This decision of the Supreme Court has been construed by our predecessors in Schwartz Supply Company, Inc. v. Breen, La.App., 184 So. 228, 231, as holding that the testimony of a co-defendant called under cross-examination cannot be considered at all as against the other defendant:
"* * * Under such circumstances it was not proper to permit one defendant called by plaintiff under the statute to give testimony adversely affecting the other defendant; or, rather, *108 it was not proper to consider such testimony as against the other defendant."
The same conclusion was reached by the Court of Appeal for the Second Circuit in Parks v. Hall, 1937, 179 So. 868, 872. See also 3 La.Law Rev. 135.
Also see Garner v. Vaughn, La.App., 139 So.2d 239, and Switzerland General Ins. Co. v. Roe, La.App., 73 So.2d 501.
It was, therefore, proper for plaintiff's counsel to examine Evans under C.C.P. art. 1634, but Evans' testimony on that cross-examination cannot be considered in determining whether plaintiff has made out a case against the other defendant, the insurer.
By the same token, we hold that the testimony given by Evans under the cross-examination above mentioned is without probative value anent Evans' contentions against the insurer. The testimony of a defendant on cross-examination by plaintiff's attorney under C.C.P. art. 1634 may not be used by said defendant to support his claims against another defendant.
This advances us to the last issue in the case and that is the claim of $1500 asserted by Evans in a third-party demand against Maryland Casualty Company. It is contended by Evans that under the following provisions of the policy:
"* * * the company shall have the right and duty to defend any suit against the insured seeking damages payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent; but the company may make such investigation and settlement of any claim or suit as it deems expedient,"
it was the duty of the insurer to defend him in the instant suit. The insurance company declined to conduct such defense, and Evans was forced to employ his own attorney and allegedly obligated himself to pay the above amount for the attorney's fee.
We have held that the claim asserted by plaintiff against Evans was without policy coverage; under an unbroken line of jurisprudence, the insurer was not obliged to defend Evans in this suit, and the latter is not entitled to be reimbursed by the insurer for any expenses he incurred in making his own defense. Where the petition or complaint alleges facts which, if proved, would establish liability upon the insured, but with respect to which liability the policy clearly provides no insurance, there is no duty on the insurer to defend the action. Employers' Liability Assurance Corporation v. Gallo, La.App., 170 So.2d 721; Smith v. Insurance Company of State of Pennsylvania, La.App., 161 So.2d 903; Kamm v. Morgan, La.App., 157 So.2d 118; Foreman v. Jordan, 131 So.2d 796 (see per curiam p. 809); Superior Cleaners v. New Amsterdam Casualty Company, La.App., 116 So.2d 195; Kelly v. United States Fidelity & Guaranty Company, La.App., 76 So.2d 116.
Those portions of the judgment which dismiss plaintiff's demands against defendant Evans and condemn plaintiff to pay all court costs below are reversed, and the judgment is amended so as to provide that plaintiff shall have judgment against defendant Evans for the full sum of $2000 with legal interest thereon from date of judicial demand until paid, and also to provide that Evans' third-party demands against Maryland Casualty Company are dismissed. As thus amended and in all other respects the judgment is affirmed. Plaintiff is condemned to pay the court cost incurred by Maryland Casualty Company in the court below, and defendant Evans is cast for all other costs in said court and also for those incurred by appellant in this court.
Reversed in part, amended and affirmed.