190 So.2d 97 (1966)
Hypolite R. LEZINA
v.
FOURTH JEFFERSON DRAINAGE DISTRICT et al.
No. 2308.
Court of Appeal of Louisiana, Fourth Circuit.
July 15, 1966.
Rehearing Denied October 5, 1966.
*98 Nathan Greenberg, Gretna, Solomon S. Goldman, New Orleans, for plaintiff-appellee.
Louis DeSonier, Jr., Parish Atty., Robert I. Broussard, Asst. Parish Atty., for defendant-appellant, Fourth Jefferson Drainage Dist.
Adams & Reese, Henry B. Alsobrook, Jr., New Orleans, for defendant-appellant, Bituminous Cas. Corp.
Before McBRIDE, REGAN and YARRUT, JJ.
REGAN, Judge.
The plaintiff, Hypolite R. Lezina, filed this suit against the defendants, Fourth Jefferson Drainage District and Bituminous Casualty Corporation, its insurer, endeavoring to recover the sum of $3,800.00 together with a veterinarian's fee, and medication representing damages incurred by him for the loss of sixteen head of cattle, which he asserts died of arsenic poisoning as a result of the negligence of an employee of the Drainage District in using arsenate of lead, a poisonous chemical, to spray vegetation growing along the banks of the Duncan Canal, which is within the territorial jurisdiction of the Fourth Jefferson Drainage District.
The defendants answered[1] and generally denied the foregoing accusations of negligence. In addition thereto, the Drainage District filed a third party petition against Bituminous requesting reimbursement predicated upon the assumption that Bituminous was its liability insurer in this instance.
After a trial on the merits, the lower court rendered judgment in favor of the *99 plaintiff and against both defendants in the sum of $3,998.43[2] From that judgment, the defendants have prosecuted this appeal.
This case was consolidated with two similar suits arising out of the same accident in order to facilitate and expedite the trial thereof. The suits referred to are entitled "Lepine v. Fourth Jefferson Drainage District, et al.", La.App., 190 So.2d 101 and "Pasqua v. Fourth Jefferson Drainage District, et al.", La.App., 190 So.2d 102. In the Lepine case, the plaintiff asserted that he was entitled to recover $2,700.00 for the loss of fifteen head of cattle, and in the Pasqua case, the plaintiff claimed that he was entitled to recover $800.00 for the loss of four head of cattle.
The record discloses, and it is not seriously disputed by respective counsel, that an employee of the Drainage District inadvertently mixed arsenate of lead with diesel oil at the yard of the Drainage District, where the mixture was then poured into a tank which was mounted upon a "jeep", in order to facilitate the spraying and ultimate destruction of vegetation growing along the banks of the Duncan Canal. The evidence reveals that the employee was unfamiliar with the task to which he was assigned, and erroneously used the poisonous mixture instead of a relatively harmless chemical designated as "24D" which was not injurious to live stock.
The banks of the canal were sprayed, during the course of which operation the jeep drove through a cattle corral, and spilled the toxic mixture therein. The plaintiff's cattle ate the poisoned vegetation and died shortly thereafter of arsenic poisoning.
On the appeal hereof, the defendants have interposed three defenses to the plaintiff's suit, two of which form the sole issues posed for our consideration.
The Drainage District insists that as a governmental agency it enjoys immunity from liability for acts performed in the exercise of a governmental function.
Bituminous Casualty Company asserts that its contract of insurance does not afford coverage to the Drainage District since (1) its policy expressly excludes accidents arising out of the maintenance of a drainage system, and (2) the accident resulted from the use of a vehicle and the policy specifically excludes accidents arising out of the ownership, maintenance, or use of vehicles, hence this was a risk which is only covered by an automobile liability policy.[3]
The Drainage District's plea of governmental immunity is without merit. In the year of 1960, Article III, Section 35, of the Louisiana Constitution of 1921 was amended to permit the Legislature to authorize suits against any "public body". Thus, the amendment expressly waived governmental immunity from suit as well as from liability and abrogated the contrary rationale with respect to immunity emanating from Duree v. Maryland Casualty Company[4] and Stephens v. Natchitoches Parish School Board.[5] Section 35 of Article III reads:
"The Legislature is empowered to waive, by special or general laws or resolutions, the immunity from suit and from liability of the state, and of parishes, municipalities, political subdivisions, public boards, institutions, departments, commissions, districts, corporations, *100 agencies and authorities and other public or governmental bodies; and each authorization by the Legislature for suit against the State or other such public body, heretofore and hereafter enacted or granted, shall be construed to be and shall be effective and valid for all purposes, as of and from the date thereof, as a waiver of the defendant's immunity both from suit and from liability. The Legislature shall, by special or general laws or resolutions, prescribe the procedural rules, including rules of venue and service of process, to govern suits against the state and other public bodies; the procedure in such suits, in the absence of applicable procedural rules promulgated by the Legislature, to be the same as in suits between private litigants. No judgment against the state or any other public body shall be exigible, payable or paid except out of funds appropriated for payment thereof. The Legislature may waive any prescription or peremption which may have accrued in favor of the state or other public body against any claim or claims on which suit is so authorized; and any prescription or peremption which may heretofore have accrued, or which would otherwise accrue prior to January 1, 1962, against any claim against the state or other public body on which suit heretofore has been authorized by the Legislature, is hereby waived, provided that suit on such claim is brought prior to January 1, 1962. No suit authorized under this constitutional provision shall be instituted in any court other than a Louisiana State court. In the case of any such claim on which suit heretofore has been authorized by the Legislature, and the suit was dismissed on the ground that the defendant's immunity from liability had not been waived, another suit on the same claim may be filed at any time prior to January 1, 1962, and such suit shall not be subject to the defense of res judicata based on the dismissal of the prior suit on such claim. (As amended Acts 1960, No. 621, adopted Nov. 8, 1960.)"
The rationale of the foregoing section of the Constitution is clear to the effect that the Legislature is empowered to waive both immunity from suit and from liability.[6]
Moreover, the Legislature has in fact waived the immunity from suit and liability of drainage districts. R.S. 38:1614 reads:
"Any drainage district shall constitute a body corporate in law, with all the powers of a corporation. It shall have perpetual existence, incur debts and contract obligations in accordance with law, sue and be sued, have a corporate seal, and do and perform any and all acts in its corporate capacity and in its corporate name necessary and proper for the carrying out of the purposes and objects for which the drainage district was created." (Emphasis added.)
This statute obviously grants to all drainage districts the right to sue and be sued.[7] In view of the foregoing legislation, the Drainage District's plea of governmental immunity possesses no merit and therefore it must respond in damages for the tortious conduct of its employee.
The second issue posed for our consideration is the defense of non-coverage asserted on behalf of the Bituminous Casualty Company. The contract of insurance existing between the defendants is designated as a manufacturers' and contractors' liability policy. This policy was issued in standard form, but contains a *101 rider applicable to counties, municipalities, townships, and other political subdivisions, which stipulates that the agreement does not apply to "drainage systems". The facts hereof reveal that the work being performed by the Drainage District, when the accident occurred, was the maintenance of the banks of the Duncan Canal by destruction of the vegetation growing thereon so as to permit the unimpeded flow of water through the canal. The foregoing work was obviously performed as a governmental function in connection with the operation and maintenance of a "drainage system".
It is well settled that a contract of insurance is a voluntary agreement between the parties, who may incorporate therein such provisions and conditions as they see fit. Moreover, when no ambiguity or doubt exists as to its meaning, it is to be enforced as written.[8] As such, the contract of insurance does not afford liability coverage for accidents which may occur in the course of maintaining the drainage district per se, and, in our opinion, the lower court erred in rendering a judgment to the contrary. What the policy of insurance does cover is not an issue posed for our consideration.
For the foregoing reasons, the judgment of the lower court is reversed in so far as it concluded that Bituminous Casualty Company was liable to the plaintiff.
The judgment in favor of the plaintiff and against the Fourth Jefferson Drainage District in the amount of $3,998.43 is affirmed.
All costs incurred herein are to be paid by the defendant, the Fourth Jefferson Drainage District.
Reversed in part and affirmed in part.
NOTES
[1] The Drainage District asserted is governmental immunity by virtue of an exception of no cause or right of action filed herein.
[2] The lower court awarded for the loss of the cattle $3,800.00; a veterinarian's fee of $150.00, and for medicine used to treat the cattle $48.43; or a total of $3,998.43.
[3] We find it unnecessary to discuss this defense, since the insurer's case turns on non-coverage under the terms of the policy.
[4] 238 La. 166, 114 So.2d 594 (1959).
[5] 238 La. 388, 115 So.2d 793 (1959).
[6] See Plaisance v. Dept. of Highways, La.App., 132 So.2d 925 (1960) and Franks v. City of Alexandria, 128 So.2d 310 (1961).
[7] See Schultz v. New Orleans Expressway Commission, 250 F.Supp. 89 (1966).
[8] See Rancatore v. Evans, La.App., 182 So.2d 102 (1966).