201 So.2d 349 (1967)
E. E. BAKER, Plaintiff-Appellant,
v.
EMPLOYERS' FIRE INSURANCE CO., Defendant-Appellee, and
Grain Dealers Mutual Insurance Company, Defendant-Appellant.
No. 10824.
Court of Appeal of Louisiana, Second Circuit.
June 30, 1967.
Rehearing Denied July 27, 1967.
*350 Shaw & Shaw, Homer, for E. E. Baker.
Mayer & Smith, Shreveport, for Grain Dealers Mut. Ins. Co.
Joseph R. Bethard, Shreveport, for appellee.
Before GLADNEY, AYRES, and BOLIN, JJ.
GLADNEY, Judge.
The instant case brought on behalf of E. E. Baker, is one of five consolidated suits arising from damages caused by a fire in the HMC Motors, Inc., in the town of Homer, Louisiana. The named defendants are Grain Dealers Mutual Insurance Company, the liability insurer of Floyd D. Harris, and the Employers' Fire Insurance Company, insurer of HMC Motors, Inc. The trial court rendered judgment in favor of Baker and against Grain Dealers, but rejected the plaintiff's demands against employers'. As the total liability of Grain Dealers was limited under its policy all judgments against Grain Dealers were reduced by proration. From the decree both Baker and Grain Dealers have appealed.
The facts as established present no significant dispute. Floyd D. Harris on September 5, 1964 was traveling in his Buick automobile enroute from Memphis, Tennessee to Shreveport, Louisiana, accompanied by his wife and sister. As he neared Homer the air conditioner of his automobile was not functioning properly. After obtaining gasoline from a filling station in Homer he was directed to HMC Motors, Inc., in order to have his air conditioner serviced. He was met there by Harold Carpenter, an official of the motor company, who instructed Harris to drive his car around into the service area of the building. Harris drove his car through the building entrance and placed it at rest to await the arrival of Lloyd L. McKenzie, a mechanic and service manager for HMC Motors, Inc. The latter very shortly appeared and began the process of putting freon, a noncombustible liquid, from a can into the air conditioner. The work involved the attachment of two gauges which furnished the freon to the unit through the suction side of the air conditioner compressor which work was accomplished at the front end of the automobile with the hood raised. As freon must be supplied into the unit with the motor running, upon instructions of McKenzie, Harris started the motor. While the second can of freon was being used, Ruell Hayes discovered a fire coming from the rear end of the Harris vehicle. Hayes had come into the area while the work was being performed and was standing near the entrance door. He testified that when he saw the fire it was coming from the back of each wheel over the top of the fenders. He yelled out, "There is a fire back here!" He further testified that he could not tell whether the fire was on the floor beneath the car or not, but he could see flames coming up on each side. When the warning was given by Hayes, Harris was standing near the right front fender of his car as were McKenzie and Carpenter. Carpenter went to the phone to call the fire department. Harris, after getting his wife and sister out of the car, got into it and moved it forward some six or more feet where it struck a large front-end alignment machine and lodged thereon, and he was unable to remove the car by placing it in reverse. McKenzie secured a water hose and began spraying the fire with water. Within five or ten minutes the fire engines came and the fire was put out by the use of chemicals. The firemen then attempted to remove the Harris vehicle from the frontend machine and while so engaged the gasoline tank of the automobile exploded violently and distributed fire over a large area destroying the automobiles owned by E. E. Baker and Sedric White. Harris testified that McKenzie had instructed him to move the burning automobile, but this was denied by McKenzie, who said no such instructions were given.
*351 At the time Harris moved the car there was no vehicle or obstruction to the rear of the burning automobile which would have prevented its driver from backing the car out of the building into the off-street parking lot. The garage was equipped with one small and three large (2½ to 3 gallon size) fire extinguishers, which had been recently inspected. Use was made only of the small extinguisher. The testimony of several witnesses was to the effect that the concrete floor of the garage was not unduly covered with oil, grease or waste, and had been cleaned up on the morning of the day of the fire. The fire occurred about 2 o'clock P.M. Considerable damage was sustained by the building, its contents and the two automobiles of Baker and White were destroyed.
The evidence fails to establish the exact origin and the cause of the fire. After Harris had moved his automobile, flames were observed coming from both sides of its rear end and also fire was on the floor behind the automobile. The facts in the instant case clearly disclose the fire orginated within the premises of the bailee and was initially confined to the area where the automobile was being serviced.
Principally two charges of negligence are made. First, it is argued that Harris was negligent in not properly driving his burning automobile backward through the entrance to the outside, and secondly, it is urged the employees of HMC Motors, Inc., Carpenter and McKenzie, could have quickly extinguished the fire had they utilized the large fire extinguishers which were available for such purpose in the building. The trial judge concluded Harris was at fault and that his negligence was the sole proximate cause of the damage sustained by the various claimants.
The operator of a garage, such as HMC Motors, Inc., is what is generally referred to as a compensated bailee. The obligation of such a bailee to its customers is governed by LSA-C.C. Arts. 2926 et seq., Art. 2937 of which binds the depositary to use the same diligence in preserving the deposit as he uses in preserving his own property, the diligence required being the use of ordinary care such as is expected of a prudent man. Neely v. Tamburello, La.App., 187 So.2d 526 (4th Cir. 1966); Rancatore v. Evans, La.App., 182 So.2d 102 (4th Cir. 1966); General Accident Fire & Life Assurance Company v. J. F. D. L., Inc., La. App., 148 So.2d 857 (4th Cir. 1963); Fireman's Fund Indemnity Co. v. Sigard, La. App., 129 So.2d 258 (4th Cir. 1961); Standard Motor Car Company v. State Farm Mutual Automobile Insurance Company, La.App., 97 So.2d 435 (1st Cir. 1957).
Where the fire orginates entirely within the depositary's premises and is confined to the subject matter of the deposit, the depositary is held to strict proof of freedom from fault, otherwise he is to be deemed guilty of negligence: Rancatore v. Evans, La.App., 182 So.2d 102 (4th Cir. 1966); Pacific Fire Insurance Company v. Eunice Motor Car Company, Inc., La.App., 46 So.2d 363 (1st. Cir. 1950); rehearing refused 47 So.2d 403; Dupuy v. Graeme Spring & Brake Service, La.App., 19 So.2d 657 (Orl. 1944); Gulf Insurance Company v. Temple, La.App., 187 So. 814 (2nd Cir. 1939); Royal Insurance Company, Ltd. of Liverpool, England v. Collard Motors, La. App., 179 So. 108 (Orl. 1938).
Application of the law of bailment in Louisiana was carefully explored by this court in Leigh v. Johnson-Evans Motors, Inc., La.App., 75 So.2d 710 (2nd Cir. 1954) and the bailee therein was held liable under conditions which the court said it was unable to reconcile with due care and freedom from fault on the part of the defendant. However, in the latter case, we were of the opinion that the doctrine of res ipsa loquitur had application. Under the established circumstances herein we find it unnecessary to give consideration to the doctrine of res ipsa loquitur, and we have considerable doubt that it does have application since it cannot in fact be said that the origin of the fire was exclusively within the knowledge *352 of the depositary. The law imposes upon the bailee the duty of preserving the subject of the deposit. It required of Carpenter and McKenzie that they immediately take proper steps to extinguish the fire when warned of its presence by Ruell Hayes. As the firemen were able to apparently "snuff out" the fire by the use of chemicals, it would seem logical that had Carpenter and McKenzie immediately used two of the three large fire extinguishers available, only minor damage would have occurred. No satisfactory explanation was given by either McKenzie or Carpenter as to why they made no effort to utilize the extinguishers, and failure to take this important action was negligence. Undoubtedly, as stated above, the bailee must preserve the property in its care and this duty requires its rescue and protection as ordinary prudence dictates. In 8 Am.Jur.2d, Bailments § 206, p. 1094, the obligation of the depositary in the case of fire is stated to be:
"His duty of reasonable or ordinary care in keeping and returning the thing bailed to the bailor has been held to include * * * in case it is menaced by fire * * * through no fault of his, he is bound to make every reasonable effort to save it; if damage or loss occurs by reason of his failure in this respect, he is liable to the bailor therefor."
In Carter v. Middleton, La.App., 76 So.2d 594 (2nd Cir. 1954) this court assessed liability due to the failure of an employee to release the gear of a truck which was on fire and permit it to roll away from the immediate proximity to a barn, the court finding that such action would have prevented the destruction of the barn and its contents.
We find ourselves in disagreement with the ruling of the trial court in holding Harris negligent. The sole basis for the ruling is that Harris, when the fire was observed, drove the car forward where it became stuck on the front-end machine and could not thereafter be removed from the building. Although Harris under different circumstances might have avoided striking the front-end alignment machine, we can think of no reason why it was imprudent for him to drive the car forward and away from the fire in lieu of reversing it to pass over the fire, which was burning upon the floor. His testimony reveals he believed there was fire on the floor behind the car and the fact was substantiated both by McKenzie and Robert DeLoach.
Consistent with our finding hereinabove set forth we hold the sole proximate cause of damage sustained by claimant herein was the negligence of Carpenter and McKenzie in failing to utilize the fire extinguishers immediately upon their discovery of the fire.
The 1953 Mercury automobile of appellant was shown to have a value of not more than $275, with salvage value of $40. Accordingly, he is entitled to a judgment of $235. Baker's claim for expenses, assertedly resulting from loss of the use of the automobile, was not supported by proper evidence; however, since total loss of the vehicle was known immediately after the fire, damages for the loss of its use may not be claimed. Drewes v. Miller, La.App., 25 So.2d 820 (Orleans Cir. 1946); Vest v. State, La.App., 90 So.2d 896 (1st Cir. 1956).
The judgment from which appealed is reversed and set aside, and it is ordered that judgment be rendered in favor of plaintiff E. E. Baker and against Employers' Fire Insurance Company in the full sum of $235 with legal interest from judicial demand until paid.
It is further ordered that plaintiff's demands against Grain Dealers Mutual Insurance Company be denied.
All costs are assessed against Employers' Fire Insurance Company.