300 So.2d 192 (1974)
Walter A. ADAMS
v.
Billy C. ROSS et al.
No. 9790.
Court of Appeal of Louisiana, First Circuit.
April 22, 1974.
On Rehearing June 28, 1974.
*193 John F. Pugh, John L. Lanier, Thibodaux, for Billy Ross and State Farm Mut. Auto. Ins., Joel L. Borrello, New Orleans, for Hanover Ins. Co.
A. Deutsche O'Neal, Sr., Houma, for plaintiff-appellee Adams.
Before SARTAIN, J., and VERON and BAILES, JJ. Pro Tem.
BAILES, Judge Pro Tem.
This appeal is from the trial court judgment in favor of plaintiff, Walter A. Adams, and against defendants, Billy C. Ross (Ross), State Farm Mutual Automobile Insurance Company (State Farm), and Hanover Insurance Company (Hanover), in solido, for the sum of $60,000, together with interest and court costs. The appealed judgment cast Ross for this full amount but restricted liability of State Farm to $10,000 and Hanover to $50,000, these amounts being the respective liability policy limits.
On our findings herein, we affirm in part and reverse in part the judgment appealed.
On the night of May 8, 1964, plaintiff and three young girls, including the daughter of defendant Ross, together with Ross, their host driver, were retuning to Houma from Baton Rouge where this group, together with others, had participated in a choir festival sponsored by certain Baptist Churches of Louisiana. The group had motored to Baton Rouge earlier this same day. The return trip was uneventful until they reached a point about one-fourth mile south of Labadiebille on Louisiana Highway One where the Ross vehicle left its right side of the highway, crossed the left or north bound traffic lane and ran into an embankment of a ditch on the bayou or east side of the highway.
None of the five occupants of the Ross vehicle were able to explain how the accident occurred. The three young girls occupying the rear seat and the plaintiff who occupied the right front seat were apparently asleep.
Mr. Ross, the host driver, testified that he, together with his passengers, left Baton Rouge at about 10:30 P.M. for their return trip to Houma. He stated that just prior to the accident he began to feel drowsy, that he remembered approaching or meeting two cars and was aware of having passed the first car but not the second car. He testified that there is a blank in his memory from the passing of this first car until after the accident. He recalled that the last time he looked at his vehicle speedometer his speed was 45 mph and that he did not know why he ran off the road.
Lt. Leonce E. Caballero, the trooper who investigated the accident testified that when he arrived at the scene at about 11:55 P.M., he found the car in the ditch on the east side of Highway One against an embankment. From his investigation he determined that the Ross vehicle was traveling south, crossed the north bound traffic lane and ran into the ditch on the Bayou La Fourche side. Only the front of the car was damaged. No skid marks were found.
*194 The only witness to the accident was Robert H. Leblanc. He explained what he saw in the following quoted testimony.
"Q. Would you tell the jury just what it was that you saw?
"A. Well, I was going towards Napoleonville and the car was coming. There was a big, like an S curve, and when I seen the car coming he turned. He turned kind of sharp fast, and I thought he was turning in a driveway. When I got to him he had went over in the little ditch, and I stopped and picked them up out the car.
* * * * * *
"Q. Now how did you know, how much of this oncomming car did you see?
"A. Not too much. I just seen his lights turn off.
"Q. Did you see that oncoming car make any signal?
"A. No signal.
"Q. How did you know that he turned?
"A. With his lights. I seen his lights, you see. I thought he was turning in a driveway.
"Q. From his standpoint, from the driver of that car's standpoint which way did he turn?
"A. Left. He turned left.
"Q. To his left. He turned to his left?
"A. To his left.
"Q. Did his car cross your lane of traffic?
"A. Yes, sir."
Initially, plaintiff brought this suit against Ross, his automobile public liability insurer, State Farm, The First Baptist Church of Houma, Louisiana (Baptist Church), and its automobile public liability insurer, Hanover Insurance Company, alleging that he was injured through the negligence of Ross and that Ross was operating his vehicle for and on behalf and as an agent of the Baptist Church.
Plaintiff alleged specific negligent operation by Ross of his vehicle which he details as failing to pay attention to where he was going, failing to keep alert, driving in a sleepy or tired condition and going to sleep while driving. He further pleads the doctine of res ipsa loquitur, and for trial by jury.
The original answers of these defendants were essentially general denials of liability.
In the sequence of the pleadings, the plaintiff filed an amended and supplemental petition wherein he alleged the following facts, to-wit:

"18.
"The First Baptist Church, prior to and since May 8, 1964, has regularly and frequently sponsored attendance by its members at various organized church related functions away from Houma.

"19.
"The groups of members were and are normally transported to such functions by individual members who volunteer to drive the groups in their own cars.

"20.
"The First Baptist Church desired that adequate liability insurance coverage be provided to members who having volunteered to drive their own cars as described above, caused injury to others, and also in favor of other members injured by members who volunteered to drive their own cars.

"21.
"Prior to May 8, 1964, The First Baptist Church requested the Funderburk *195 Agency to procure for it an insurance policy affording the coverage desired in the foregoing paragraph.

"22.
"The Funderburk Agency undertook to do so and, acting as agent for Hanover Insurance Company, issued to The First Baptist Church the policy referred to in paragraph 6 and 7 of the original petition, for which policy The First Baptist Church duly paid premiums.

"23.
"On the day of the accident complained of herein, members of The First Baptist Church, including Billy C. Ross and petitioner, attended a choir festival held in Baton Rouge under the sponsorship of The First Baptist Church.

"24.
"Billy C. Ross had volunteered to drive and did drive other members, including petitioner, to and from the choir festival in Baton Rouge in his own car.

"25.
"While Billy C. Ross was driving his car from the choir festival in Baton Rouge back to Houma, the accident complained of occurred.

"26.
"In the event that the policy issued by Hanover Insurance Company to The First Baptist Church does not by its written terms provide coverage in accord with the intent of the parties; and specifically to the accident complained of, then it should be reformed to do so."
Third party actions were filed by the Baptist Church and Hanover against Ross and State Farm seeking indemnification of any liability to plaintiff. The Baptist Church filed third party action for reformation of its policy against Hanover, Funderburk Agency and the latter's errors and omissions insurer, St. Paul Fire and Marine Co. Finally, Hanover files a third party demand against Funderburk Agency and St. Paul Fire and Marine Insurance Company to recover any amount it must pay to plaintiff if the policy is reformed.
It was agreed that the jury would try the demands of the plaintiff against Ross, State Farm, Baptist Church and Hanover as well as the demands of the plaintiff for reformation of the Hanover policy issued to the Baptist Church. It was further agreed between the parties that the district judge would decide all other issues.
Although the Baptist Church filed a third party demand against Hanover and Funderburk Agency, Inc. (Funderburk), and St. Paul Fire and Marine Ins. Co. (St. Paul), for reformation of the liability policy it obtained through Funderburk, these actions terminated with the voluntary dismissal by the plaintiff of the Baptist Church (See Bolin v. Hartford Accident & Indemnity Company, La.App., 204 So.2d 49, and the cases cited therein), the third party actions by Hanover against Funderburk and St. Paul remained viable because plaintiff's policy reformation demands against Hanover was a relief sought in the main demand by supplemental and amended petition.
Therefore, under the agreement for a division of trial of the matters, the trial court was required to try and adjudicate the third party demands of Hanover against Funderburk and St. Paul, as well as the third party demands of Funderburk and St. Paul against J. Everett Eaves, Inc., the general agent of Hanover through whom the Hanover policy was written, all of which inextricably involved whether there was proof made such as to support reformation of the Hanover policy.
The trial court sustained the exception of one year prescription filed by Funderburk and St. Paul to the third party demand of the Baptist Church. Further, the *196 trial court held that the plaintiff had no right of action against Hanover for reformation because of the lack of privy to the insurance contract between the Baptist Church and Hanover. Additionally, the trial court held that the essential legal requirements for reformation had not been proved.
In view of our holding, it is not essential that we pass on the correctness of the trial court's holdings.
Prior to submission of the case to the jury, the Baptist Church was dismissed as a defendant in the principal demand, on the exception of no right of action urging charitable immunity.
In addition to the general verdict, the jury was submitted interrogatories which it answered in writing.
These interrogatories and answers are as follows:
1. Was Billy C. Ross negligent?
Answer: Yes.
2. Did negligence, if any, of Billy C. Ross proximately cause the accident?
Answer: Yes.
3. Was Walter A. Adams negligent?
Answer: No.
4. Not applicable.
5. On May 8, 1964, did Mr. Ross have a very close economic relationship with The First Baptist Church?
Answer: No.
6. On May 8, 1964, did Mr. Ross receive a salary from The First Baptist Church for driving his car to Baton Rouge?
Answer: No.
7. Do you find that The First Baptist Church had the right to control and did in fact control the physical movements of Mr. Ross in driving to and from Baton Rouge on May 8, 1964?
Answer: Yes.
8. What amount, if any, is the plaintiff entitled to recover?
Answer: $60,000.
9. Do you find as a fact that Rev. Hyatt representing The First Baptist Church specifically requested a policy different from the policy issued by the Funderburk Agency?
Answer: Yes.
10. Do you find as a fact that Mr. Richard Mire, representing the Funderburk Agency, at any time represented to the church or Rev. Hyatt that the automobile liability policy would provide legal liability coverage for Mr. Ross, if any (sic)?
Answer: Yes.
11. Was there mutual agreement between Mr. Mire and Rev. Hyatt with respect to the type of insurance coverage intended?
Answer: Yes.
12. Should the policy issued by Hanover Insurance Company to The First Baptist Church be reformed to cover the legal liability, if any, of Mr. Ross?
Answer: Yes.
We find the judgment appealed correctly determined liability against Ross and State Farm; however, the plaintiff's demand for reformation of the Hanover policy issued to the Baptist Church must be reversed. We find the jury committed an error of law in this finding for reformation.
According to the insuring agreement contained in the Baptist Church policy there is no automobile liability insurance coverage afforded to the Ross vehicle by the defendant, Hanover. The following *197 quoted portion of the Insuring Agreements fully supports this conclusion:
"INSURING AGREEMENTS
"I. Coverage ABodily Injury Liability. * * *
Coverage BProperty Damage Liability. * * *
"II. Defense, Settlement, Supplementary Payments. * * *
"III. Definition of Insured. The unqualified word `Insured' includes the named insured and also includes any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission, and any executive officer of the named insured with respect to the use of a non-owned automobile in the business of the named insured. The insurance with respect to any person or organization other than the named insured does not apply:
(a) * * *;
(b) * * *;
(c) * * *;
(d) * * *;
(e) with respect to any non-owned automobile, to any executive officer if such automobile is owned by him or a member of the same household.
From the record it is obvious that there were only two persons who had knowledge of the negotiations leading to the issuance of the insurance policy by Hanover to the Baptist Church. The pastor of the Baptist Church, the Reverend Leon M. Hyatt, Jr., and Mr. Richard Mire, the representative of the Funderburk Agency, were the only persons involved in the negotiations for the insurance and had knowledge of what transpired. Both the Rev. Hyatt and Mr. Mire testified.
The testimony of the Rev. Hyatt was elicited on cross-examination under the provisions of LSA-C.C.P. Article 1634 which permits an adverse party to call on cross-examination any party or his representative.
While it was proper for plaintiff to call the representative of the Baptist Church on cross-examination, it was not proper for such evidence so obtained to be used adversely to Hanover in determining whether there should be reformation of the contract.
In Edwards Bros. v. Berner et al., 154 La. 791, 98 So. 247, the Supreme Court, in considering whether a similar statute (Act No. 126 of 1908) authorized the consideration of testimony of one defendant under cross-examination against his co-defendant, held:
"* * * The statute (Act No. 126 of 1908) grants the right to a litigant to examine his opponent, as under cross-examination, without being held as vouching to the court for the credibility of the opponent so placed upon the stand, or as being estopped in any lawful way from impeaching the testimony given by such adversary. The statute does not extend the right and privilege of a litigant to cross-examine one defendant as against his codefendant."
The Court of Appeal, Second Circuit, followed the holding of Edward Bros. v. Berner, supra, in Parks v. Hall et al., 179 So. 868 (reversed by the Supreme Court on other grounds, see 189 La. 849, 181 So. 191), in which the trial court had permitted a co-defendant to be placed on the stand to give testimony on cross-examination against the other co-defendant where their interests were not the same. The court on page 872 of 179 So. held:
"We think that the trial court erred in overruling the objection urged by the employer and his insurer, and that defendant Hall's testimony, in so far as they were concerned, should have been *198 excluded. Under the provisions of Act No. 126 of 1908, as amended by Act No. 115 of 1934, a litigant may examine his opponent, as under cross-examination, and the testimony elicited is binding on the witness. But such litigant is not granted the right by that statute to obtain testimony under cross-examination from one defendant for use against and to bind his co-defendant. * * *."
This holding has been followed in Schwartz Supply Co. v. Breen, La.App., 184 So. 228 (1938), and in the more recent cases of Switzerland General Insurance Co. Ltd. v. Roe, La.App., 73 So.2d 501 (1954) and Rancatore v. Evans, La.App., 182 So.2d 102 (1966).
Rancatore v. Evans, supra, is similar to the instant case, in that, inter alia, there was involved a dispute between a tortfeasor and his insurer as to the type of coverage to be provided. Therein the court stated:
"[9, 10] There is hopeless conflict in this testimony of Gohres and that of Evans as to what kind of policy should have been issued. However, we note that the testimony of Evans was adduced while he was on cross-examination by plaintiff's counsel under C.C.P. art. 1634. In other words, plaintiff is basing his argument that there was misrepresentation on the part of Gohres as to the type of insurance policy and coverage thereunder on the testimony of Evans given on cross-examination conducted by plaintiff's counsel under C.C.P. art. 1634. The interests of plaintiff and Evans regarding insurance protection are identical, and of course, it behooves each to show that the nature of the policy was misrepresented by Gohres. Plaintiff seeks to make his point by using the testimony of one defendant given on cross-examination against the other defendant, the insurer. This he cannot do. The law is plain that the testimony of one defendant given under such cross-examination may not be used against any other co-defendant. This rule was laid down in Edwards Bros. v. Berner, 154 La. 791, 98 So. 247. There the Supreme Court had this to say about the then prevailing statute pertaining to the right to cross-examine an adverse party:
"* * * The statute (Act 126 of 1908) grants the right to a litigant to examine his opponent, as under cross-examination, without being held as vouching to the court for the credibility of the opponent so placed upon the stand, or as being estopped in any lawful way from impeaching the testimony given by such adversary. The statute does not extend the right and privilege of a litigant to cross-examine one defendant as against his codefendant. * * *.'
"This decision of the Supreme Court has been construed by our predecessors in Schwartz Supply Company, Inc. v. Breen, La.App., 184 So. 228, 231, as holding that the testimony of a co-defendant called under cross-examination cannot be considered at all as against the other defendant:
`* * * Under such circumstances it was not proper to permit one defendant called by plaintiff under the statute to give testimony adversely affecting the other defendant; or, rather, it was not proper to consider such testimony as against the other defendant.'
"The same conclusion was reached by the Court of Appeal for the Second Circuit in Parks v. Hall, 1937, 179 So. 868, 872. See also 3 La.Law Rev. 135.
"Also see Garner v. Vaughn, La.App., 139 So.2d 239, and Switzerland General Ins. Co. v. Roe, La.App., 73 So.2d 501.
"It was, therefore, proper for plaintiff's counsel to examine Evans under C.C.P. art. 1634, but Evans' testimony on that cross-examination cannot be considered in determining whether plaintiff has made out a case against the other defendant, the insurer."
*199 To warrant reformation of a policy of insurance the trier of fact must be convinced by a preponderance of the evidence that there was a mutual mistake committed by the contracting parties and that the policy as written does not express the actual intent of the parties, or must find mistake on one side and fraud on the other. As no fraud was alleged consideration is to be given only to the question of mutual mistake. This condition for reformation, i. e., mutual mistake, has been consistently adhered to by the courts of this state. See: Davega and Co. v. Crescent Ins. Co., 7 La.Ann. 228; Gaudet v. North River Ins. Co., 156 La. 719, 101 So. 118; Topps v. North British & Mercantile Ins. Co., La. App., 148 So. 470; Maryland Casualty Company v. Kramel, La.App., 80 So.2d 897; Easley v. Boston Insurance Company, La.App., 132 So.2d 654; Collins v. State Farm Mutual Auto. Ins. Co., La.App., 188 So.2d 460.
Herein the only evidence legally before the jury on this question of reformation was that of Mr. Richard Mire, the fair import of whose testimony is that the policy ordered by the Rev. Hyatt and delivered to the Baptist Church by Funderburk Agency was one to cover the legal liability of the Baptist Church. This testimony of Mire will not support the jury's verdict awarding reformation of the insurance policy to provide insurance coverage thereunder to members of the church using member-owned vehicles on a church related trip.
Turning now to a consideration of negligence of Ross, the finding of the jury must be affirmed.
In their brief, defendants Ross and State Farm argue that the description of the accident and circumstances thereof "clearly substantiate the position of the defendants that carbon monixide (sic) in deadly quantities existed in the automobile and caused four people and ultimately the fifth (the driver) to go to sleep, and that is what caused the car to run off the travelled portion of the roadway. * * * *."
Defendants argue that on the basis of these facts, we should conclude that the accident was unavoidable and that Mr. Ross was free of negligence.
We find this argument totally without factual foundation. There is not one scintilla of evidence of the presence of carbon monoxide gas in the vehicle.
It is not necessary to resort to the doctrine of res ipsa loquitur to find that Mr. Ross was negligent in the operation of his vehicle. The mute evidence that the vehicle ran into the ditch coupled with the testimony of Mr. Leblanc, clearly establishes actionable negligence on the part of Mr. Ross. Mr. Leblanc testified that he observed the approaching Ross vehicle and saw it turn across the highway as though it were turning into a driveway. Moments later he arrived on the scene to find the car had struck the embankment of a ditch on the Bayou Lafourche side of the highway.
The principal treating physician of plaintiff summarized his injury as follows:
On initial examination upon admission to the hospital, plaintiff was conscious, bleeding rather profusely from his mouth and both nasal cavities, a deep laceration down to the bony structures of the nose which was fractured. He had an opening into his left maxillary sinus. He had multiple cuts to the left side of his face in particular and the left upper and lower eyelids. He was complaining of pain in the low part of his back and he had congestion of both lower lungs. Examination of the spine showed compression fracture of his fifth vertebra. A tracheotomy was performed to control respiration and for suction of secretions from the nose and throat.
Mr. Adams was a hospital patient from May 8, 1964, to his discharge on July 6, 1964. During the course of the initial treatment on admission to the hospital a *200 total of four consultations were necessary with doctors of the various involved specialties. He was treated by an oral surgeon, several doctors of the ear, eye, nose and throat specialties, as well as an internist.
His hospital stay was described by the doctor in charge as a "stormy hospital course." In elaborating on this, the doctor testified that Mr. Adams "became shocking and disoriented." Because of the development of some renal problems, he had to be fed through an inserted tube.
As a result of the numerous injuries to the bone and soft tissues, his kidneys could not handle the trauma induced physiological soft tissue changes. This caused toxic psychosis or a mental disorientation. While in the hospital, plaintiff developed pneumonia caused by the aspiration of blood initially from the head and facial injuries. He was diagnosed, clinically, as having had a basal skull fracture. This was based on the finding of blood escaping from the ear.
Mr. Adams was discharged by his principal physician on November 23, 1964.
Subsequently, on January 11, 1965, plaintiff was hospitalized in New Orleans for treatment of a chronic recurrent draining lesion of the left upper eyelid which was caused by the accident. Then he was hospitalized a second time in New Orleans where a dacryocystorhinostomy was performed on the left eye for the formation of a tear duct from the left eye to the nasal cavity. Also at this time a mass of foreign body was removed from the inside of the upper eyelid.
We are convinced, as no doubt the jury was also, that plaintiff was seriously injured and that for a considerable time he was gravely ill.
At the time of the accident, plaintiff was a 67 year old retired driller for Freeport Sulphur Company. The medical bills totalled $3081.54. At the time of trial, plaintiff, then 72 years old, suffered from double vision, pains in the back of his head and pains in his back. He had reached maximum recovery at that time.
In defendant Ross' brief, the argument is made that he is a man of very limited means and that this fact should be taken into consideration in determining quantum. The evidence supports these facts. At the time of the trial in 1970, Mr. Ross was 45 years of age, married, residing with his wife and one ten year old daughter. Two older daughters were both married. He is a graduate mechanical engineer employed by Delta Iron Works in Houma, Louisiana, at an annual salary of $12,000 and is the sole support of his family. He owns his home valued at about $17,000 which is encumbered with a mortgage on which there is a balance due of about $12,000. He owns an undivided one-twelfth interest in a farm in Alabama from which he receives no income. He owns a 1964 sedan automobile worth about $600, and maintains a checking account of about $1,000.
In assessing quantum, it is apparent to us that the jury took into consideration the policy limits of State Farm of $10,000 and Hanover policy limits of $50,000 in arriving at the total sum award of $60,000.
The ability or inability of a tortfeasor to respond in damages is a factor to be considered in assessing damages. This is an element to consider in diminishing an otherwise adequate and fair award. See: Danove v. Mahoney, La.App., 176 So. 404; Hartman v. Aschaffenburg, La.App., 12 So.2d 282; Keith v. Royal Indemn. Co., La.App., 90 So.2d 534; Lacaze v. Horton, La.App., 100 So.2d 252; and Hale v. Aetna Casualty & Surety Co. et al., La.App., 273 So.2d 860.
After giving due consideration to the means of the defendant, Ross, and his inability to respond to an award of $60,000, we find that the jury award of $60,000 is excessive and should be reduced. Under the circumstances, we conclude that an award of $25,000 would be fair, adequate and does substantial justice to all parties.
For the foregoing reasons, the judgment in favor of plaintiff and against Hanover Insurance Company in the amount of *201 $50,000 is reversed and all actions herein asserted against Hanover Insurance Company are dismissed; and the judgment in favor of plaintiff and against defendants, Billy C. Ross and State Farm Mutual Automobile Insurance Company, in solido, is amended to reduce it to the amount of $25,000, limiting the in solido judgment against State Farm Mutual Automobile Insurance Company to the policy limit of $10,000, together with legal interest on the total amount of this judgment from date of judicial demand until paid, and for all costs of this suit.
Reversed in part, affirmed in part, and rendered.

ON REHEARING
PER CURIAM.
We granted a rehearing herein limited to the determination of from what date interest is due on the amount of the judgment in excess of policy limits.
The pertinent provision of the policy issued by State Farm Mutual Automobile Insurance Company to co-defendant, Billy C. Ross, is the following:
"Part ILiability
"Coverage ABodily Injury Liability;
"Coverage BProperty Damage Liability. * * *
"Supplementary Payments. To pay, in addition to the applicable limits of liability:
(a) All expenses incurred by the company, all costs taxed against the insured in any such suit and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the company's liability thereon; * * *."
Under the terms of the policy contract the defendant, State Farm, is liable for legal interest on the maximum amount of coverage for injuries received by one person of $10,000.00 from date of judicial demand until paid and is liable for legal interest on the amount of the judgment in excess of the policy limit from the date the judgment was signed in the trial court until the principal amount of the judgment for which the insurer is liable is paid, or tendered or deposited in the registry of the court.
See: Doty v. Central Mutual Ins. Co., La.App., 186 So.2d 328.
This in no wise affects the liability for interest due by defendant, Billy C. Ross, on the total amount of the award from date of judicial demand until paid; he, of course, will receive the benefit of any interest paid by his insurer.
We fix the date of the judgment for payment of interest on the excess award as February 5, 1973, as it was on that date the trial judge signed the judgment of the trial court.
As qualified by this per curiam, the original opinion is reinstated.